## COMMONWEALTH *vs.* DANIEL DOWNEY.

No. 01-P-1359.

Suffolk. January 9, 2003. - July 18, 2003.

Present: PERRETTA, COWIN, & GREEN, JJ.

*Constitutional Law,* Assistance of counsel. *Attorney at Law,* Attorney-client relationship, Conflict of interest. *Privileged Communication. Practice, Criminal,* Cameras in courtroom, Assistance of counsel, New trial.

This court vacated an order denying a motion for a new trial on a charge of murder in the first degree, and remanded for an evidentiary hearing, where the affidavits submitted on the motion for a new trial raised substantial issues that warranted a hearing, namely, whether the defendant knowingly consented before trial to an arrangement whereby his lead trial attorney wore throughout the trial a body microphone as part of an agreement with a television production company, and if not, whether the defendant's motion for a new trial required a showing of prejudice. [594-600]

INDICTMENT found and returned in the Superior Court Department on March 24, 1998.

The case was tried before *Daniel A. Ford,* J., and a motion for a new trial, filed on April 10, 2001, was considered by him.

*Willie J. Davis* for the defendant.

*Jane A. Sullivan,* Assistant District Attorney, for the Commonwealth.

GREEN, J. To support his motion for a new trial, the defendant submitted an affidavit with an extraordinary claim: that his lead trial attorney had agreed with a television production company to wear a body microphone throughout the defendant's trial on a charge of murder in the first degree, and that the defendant first learned of that arrangement in court on the second day of the trial. A judge of the Superior Court denied the defendant's motion without an evidentiary hearing, concluding that the defendant had shown no prejudice as a result of the arrangement. We vacate the order denying the new trial motion and remand

the matter for an evidentiary hearing, because the affidavits submitted on the new trial motion raised substantial issues warranting a hearing: whether the defendant knowingly consented to the arrangement prior to trial and, if not, whether the defendant's motion for a new trial required a showing of prejudice.

*Background.* The defendant was charged with murder in the first degree and tried, together with his brother as a codefendant, beginning on November 8, 1999. A production crew from the British Broadcasting Company (BBC) filmed the trial. Portions of the trial, including a mid-trial discussion between trial counsel and the defendant on the question whether the defendant should plead guilty to manslaughter, later aired in the United States as part of a documentary segment on the television program "Frontline."[1] The defendant elected not to enter a plea, and was convicted of murder in the second degree on November 16, 1999.[2]

While the defendant's direct appeal from his conviction was pending, he filed a motion for new trial which claimed interference with his right to counsel (under art. 12 of the Massachusetts Declaration of Rights and the Sixth Amendment to the United States Constitution) and deprivation of "the basic right of attorney-client confidential communications." In support of his motion, the defendant asserted in an affidavit that, observing a camera in the courtroom on the first day of trial, he asked his lead attorney why the camera was there and was informed that "the media had the right to be there," that there was nothing he could do to prevent the filming of the trial, and that "the judge had approved [the filming of the trial]." The defendant's affidavit went on to state as follows:

> "On the second day of trial I heard Joseph [the codefendant brother] ask his attorney a question. The attorney opened his coat and said something to the effect of 'Why don't

---

[1]The program was not broadcast until after the jury returned their verdict, and the defendant makes no claim that the jury's deliberations were affected by the filming of the trial or the content of the program.

[2]We affirmed the conviction on direct appeal. See *Commonwealth* v. *Downey,* 56 Mass. App. Ct. 1111 (2002).

you tell them or ask them yourself.' It was at this time that I realized both attorneys were wired for sound."

The defendant's affidavit also stated that he was hesitant to speak to his lead attorney after learning about the microphone, and that he did not give his lead attorney permission to have any of their conversations recorded or to wear a microphone during the trial.[3] The defendant does not assert, and the record does not otherwise indicate, that the defendant voiced objection to the microphone before the end of his trial.

With its opposition to the defendant's motion, the Commonwealth submitted affidavits of the defendant's lead and assisting trial counsel.[4] Though the affidavits are less than clear on the details of the discussion of the subject with the defendant, in essence the attorneys' affidavits assert that the defendant was advised before trial that lead counsel would be wearing a microphone, and that the defendant assented to that arrangement.[5] The affidavits of counsel also state that they did

---

[3]Neither party has raised (and we accordingly do not consider) the potential applicability of G. L. c. 272, § 99, the Massachusetts wiretap act, to the arrangement of which the defendant now complains. As a general matter, that statute prohibits the recording of oral communications without consent (subject to various exceptions). See *Commonwealth* v. *Ennis*, 439 Mass. 64, 66-67 & nn. 4, 6 (2003).

[4]The defendant is represented by new counsel on appeal.

[5]The affidavit of lead counsel stated that the BBC had requested his permission to record the trial with body microphones; that the BBC representative explained that he was seeking the "extra flavor of the comments of counsel" and assured counsel that no conversations between the attorneys and their clients would be used in the piece; that lead counsel had discussed the BBC request with the attorneys for the defendant's brother and with the attorney assisting him in defense of the defendant; that counsel had sent his assisting counsel to explain "the filming and the sound issues" to the defendant (who was being held in jail pending trial); that assisting counsel reported back that the defendant had requested money in exchange for his participation; that he (lead counsel) advised the defendant before trial that "while [the defendant] could stop our participation in the filming (not wear the microphone, not speak to [the BBC representative] and others, etc.), but it being America, there was a first amendment right for the trial to be filmed"; and that, before the trial, the defendant assented to "the procedure."

The affidavit of assisting counsel stated that he visited the defendant in jail and "asked him if he would approve of a filming of the trial"; that the defendant said that he would approve of the filming if he were paid $2,000;

not perceive that the microphone inhibited or interfered in any way with the defendant's communication with them during trial.

A Superior Court judge (who had presided over the defendant's trial) denied the motion without a hearing. In his memorandum of decision, the judge credited the affidavits of trial counsel to the effect, inter alia, that they did not perceive the defendant to be intimidated, or otherwise impaired in his dialogue with counsel during trial, by the fact that lead counsel was wearing a microphone. The judge also noted that, from his own observations during trial, the defendant and his counsel had "seemed to enjoy an excellent working relationship throughout the proceedings." Finally, the judge cited the defendant's failure to demonstrate that he had been prejudiced by reason of his attorney's microphone. The defendant moved for reconsideration of the judge's order and, when that failed, filed this appeal.[6]

*Discussion.* A judge presented with affidavits relating to a new trial motion may rule on "the issue or issues presented by such motion on the basis of the facts alleged in the affidavits without further hearing if no substantial issue is raised by the motion or affidavits." Mass.R.Crim.P. 30(c)(3), as appearing in 435 Mass. 1501 (2001). Whether the motion and supporting materials raise a substantial issue warranting an evidentiary hearing depends on the seriousness of the issue and the adequacy of the defendant's showing, but is largely committed to the sound discretion of the motion judge. See *Commonwealth*

---

that assisting counsel advised lead counsel of the defendant's request for payment; that both advised the defendant that he could not get paid; and that "at some point thereafter [the defendant] agreed to a filming of the trial." The latter affidavit did not address specifically the topic of lead trial counsel wearing a microphone to record conversations with the defendant during the trial.

[6]The Commonwealth moved to dismiss the appeal on the ground that the defendant's direct appeal, which was not stayed, divested the Superior Court of jurisdiction to consider the new trial motion. See *Commonwealth* v. *Montgomery*, 53 Mass. App. Ct. 350, 351-352 (2001). However, a single justice of this court on April 24, 2002, granted leave to the Superior Court, nunc pro tunc to August 15, 2001, to act on the defendant's motion.

v. *Stewart*, 383 Mass. 253, 257-258 (1981); *Commonwealth* v. *Britto*, 433 Mass. 596, 608 (2001). We give substantial deference to the determination of the motion judge whether to hold a hearing on a new trial motion, particularly if the motion judge presided over the trial. *Commonwealth* v. *DeVincent*, 421 Mass. 64, 69 (1995). *Commonwealth* v. *Britto, supra.* However, even if the motion judge presided over the trial, we will require an evidentiary hearing if the defendant's motion and affidavits adequately demonstrate a serious issue of constitutional significance. See *Commonwealth* v. *Licata*, 412 Mass. 654, 660-661 (1992); *Commonwealth* v. *Moreau*, 30 Mass. App. Ct. 677, 678 (1991), cert. denied, 502 U.S. 1049 (1992).

The defendant's claim — that his lead trial counsel agreed, without prior notice to the defendant, to wear a body microphone during the defendant's trial, thereby allowing a third party broadcast crew to listen to and record all conversations between the defendant and his trial counsel during trial — is unquestionably serious. The claim goes to the heart of the relationship of confidence between the defendant and his attorney and accordingly raises potential concerns relating to the defendant's right to the assistance of counsel. The motion judge nonetheless concluded that the defendant was not entitled to a new trial because he failed to demonstrate that he had suffered prejudice by reason of the unorthodox arrangement.

On appeal, the defendant argues that counsel's agreement to wear a body microphone during trial created an actual conflict of interest and that, accordingly, the defendant was not required under art. 12 of the Massachusetts Declaration of Rights to demonstrate prejudice. See *Commonwealth* v. *Martinez*, 425 Mass. 382, 388 (1997); *Commonwealth* v. *Allison*, 434 Mass. 670, 688 (2001).[7] The defendant's claim of conflict rests on his contention that trial counsel's agreement with the BBC obliged counsel to violate his ethical duty to maintain the confidentiality

---

[7] In this respect, art. 12 of the Massachusetts Declaration of Rights offers protection more generous than that furnished under the Sixth Amendment to the Constitution of the United States. *Commonwealth* v. *Martinez*, 425 Mass. at 388.

of communications between counsel and the defendant.[8],[9]

It is axiomatic that among the highest duties an attorney owes a client is the duty to maintain the confidentiality of client information. See *Matter of a John Doe Grand Jury Investigation*, 408 Mass. 480, 481-483 (1990). The underlying rationale supporting the duty (and its concomitant privilege) was stated eloquently by Chief Justice Shaw more than a century ago:

> "that so numerous and complex are the laws by which the rights and duties of citizens are governed, so important is it that they should be permitted to avail themselves of the superior skill and learning of those who are sanctioned by the law as its ministers and expounders, both in ascertaining their rights in the country, and maintaining them most safely in courts, without publishing those facts, which they have a right to keep secret, but which must be disclosed to a legal adviser and advocate, to enable him successfully to perform the duties of his office, that the law has considered it the wisest policy to encourage and sanction this confidence, by requiring that on such facts the mouth of the attorney shall be for ever sealed."

*Hatton* v. *Robinson*, 14 Pick. 416, 422 (1834).

The duty of confidentiality is embodied, with certain exceptions, in the rules of professional conduct applicable to

---

[8]The Commonwealth argues that the defendant's claim of an actual conflict of interest was not raised in the defendant's new trial motion and therefore should be deemed waived. See *Commonwealth* v. *LaFave*, 430 Mass. 169, 172-173 (1999). However, the defendant's new trial motion argued that the recording arrangement deprived the defendant of "the basic right of attorney-client confidential communications." Though the deprivation of confidentiality was cast in the new trial motion in terms of impairment of the defendant's right to counsel rather than as an actual conflict of interest, since the alleged conflict of interest arises from the same right to confidentiality we consider as properly before us the defendant's claim of a conflict of interest arising from a violation of his counsel's duty of confidentiality. Cf. *Commonwealth* v. *Martinez*, 425 Mass. at 387-388 (right to counsel includes counsel free of conflict).

[9]The defendant advances an additional theory, for the first time on appeal, that trial counsel's agreement with the BBC sought to advance counsel's private interests to the detriment of the defendant's. Unlike the claim of conflict deriving from a breach of the duty of confidentiality, this theory finds no reference in the defendant's new trial motion or the affidavits submitted in its support; it is accordingly waived and we do not consider it. However, in light of our disposition remanding the matter for an evidentiary hearing, the defendant on remand may move to amend his new trial motion to allow him to pursue both theories.

attorneys. See Mass.R.Prof.C. 1.6(a), 426 Mass. 1322 (1998).[10] See also *Commonwealth* v. *Martinez*, 425 Mass. at 391-392 (citing predecessor rule). See generally Rosenfeld, The Duties and Obligations of Confidentiality and Candor under the Massachusetts Rules of Professional Conduct, 82 Mass. L. Rev. 277 (1997).

The general rule on conflicts of interest appears in Mass.R. Prof.C. 1.7, as amended, 430 Mass. 1301 (1999). In particular, rule 1.7(b) states that

> "[a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> > (1) the lawyer reasonably believes the representation will not be adversely affected; and
> >
> > (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved."

If, and to the extent that, trial counsel's agreement with the BBC obliged him to commit breaches of his duty of confidentiality toward the defendant, it created an actual conflict of interest.[11] In such circumstances, the defendant would not be required to demonstrate prejudice to support his new trial motion.[12] However, the duty of confidentiality is not absolute.

---

[10]Comment 5 to rule 1.6 observes the close relationship between the attorney's duty of confidentiality and the client's right, under the law of evidence, to assert a privilege protecting that confidentiality.

[11]That is not to say that any unauthorized disclosure by an attorney of confidential client information gives rise to an actual conflict of interest. In the present case it is the *agreement* to disclose confidential client communications that places the attorney in a position of conflict, by subjecting him to competing responsibilities, rather than the disclosure itself.

The precise terms of the agreement itself are not apparent from the record. Our description of the terms of the arrangement are derived from the affidavits of trial counsel (see note 5, *supra*; if there was a written agreement, it is not in the record.

[12]Indeed, to require a showing of prejudice where the claimed conflict arises from a breach of the duty of confidentiality would be particularly

In particular, an attorney is not in breach of his duty of confidentiality by making a disclosure authorized by his client. See *District Attorney for the Plymouth Dist.* v. *Selectmen of Middleborough*, 395 Mass. 629, 633-634 (1985). The heart of the defendant's claim in his new trial motion is that he gave no such authorization, and the heart of the Commonwealth's opposition is its insistence that the defendant did authorize the microphone arrangement. The motion judge made no express finding on this crucial question, and the affidavits are somewhat equivocal.[13] See note 5, *supra.* Beyond the bare question of the defendant's authorization is the question of what advice the defendant received about the potential consequences of his approval of the arrangement, and what (if any) limitations were imposed to mitigate those potential consequences. On those topics the affidavits are entirely silent, making it impossible to assess whether the defendant's approval, if in fact given, was given knowingly and intelligently after consultation with counsel.[14]

We pause to observe what at this point must be obvious: that the arrangement undertaken by trial counsel with the BBC was fraught with peril, whether or not the defendant approved it before trial. Despite the promise by the BBC representative not to use conversations between the defendant and his counsel in the program, the arrangement inevitably created the possibility that otherwise confidential communications might be disclosed

problematic. The defendant asserts that the knowledge that third parties could listen to his conversations with counsel prevented him from saying things he would have said but for the presence of eavesdroppers. It would be a Pyrrhic victory for the defendant to gain a new trial if in order to do so he must disclose information or trial strategy previously withheld to protect its confidentiality.

[13]The motion judge's memorandum of decision stated that he "accept[ed]" the affidavits of lead and assisting trial counsel as being "true and accurate," and that he "[did] not believe the defendant's contention that he 'discovered' that [lead counsel] was wearing a microphone on the second day of trial." However, given the lack of precision in the underlying affidavits and the significance of the question, and particularly in light of the fact that there was no evidentiary hearing, we decline to construe the above-described statements as an express finding that the defendant authorized the disclosure of attorney-client communications prior to trial.

[14]Mass.R.Prof.C. 1.7(b), quoted *supra*, permits a lawyer to represent a client in the face of competing duties to a third party, if the lawyer reasonably believes the representation will not be adversely affected, and the client consents after consultation.

to the disadvantage of the defendant.[15] For example, if the defendant agreed to allow the BBC to record conversations with his attorney, the defendant likely would be unable to prevent their use by the prosecution against him during the trial, if they obtained the material by some means. See *In re Von Bulow*, 828 F.2d 94, 100-101 (2d Cir. 1987); *United States* v. *Noriega*, 917 F.2d 1543, 1551 (11th Cir.), cert. denied sub nom. *Cable News Network, Inc.* v. *Noriega*, 498 U.S. 976 (1990). In the event of a new trial (by reason of a mistrial or other procedural defect in the initial trial), the mid-course tactical discussions between the attorney and the defendant might well be subject to subpoena, again by reason of waiver of the privilege. That the BBC's agreement not to use conversations with the defendant was an inadequate safeguard of confidentiality is demonstrated by the inclusion in the eventual Frontline program of discussion by the defendant with his counsel of a mid-trial plea offer. On the present record we are unable to discern what (if any) mitigating or protective measures counsel may have discussed with the defendant, such as an agreement by the prosecution to assert no claim that the arrangement waived the attorney-client privilege,[16] or a mechanism by which counsel might disable the microphone at designated times or at any time upon the defendant's request. It is possible that such arrangements or others were in place, and were discussed with the defendant before he approved the arrangement (if he approved it), but the record is silent on the topic. Given the risks inherent in the arrangement, and the importance of confidentiality to the attorney-client relationship, it is difficult to imagine (as appears, however, to be the case) that counsel undertook the arrangement without a written

[15]Indeed, except to record the private conversations between the attorneys and the defendants, or among the defense attorneys themselves, it is difficult to understand what purpose the body microphones would serve. Even if observed fastidiously, the BBC's agreement not to use conversations between the defendants and their attorneys was insufficiently broad — conversations among counsel for the codefendant brothers could well incorporate and reveal otherwise privileged and confidential communications. Furthermore, even if private conversations were not aired as part of the eventual broadcast, members of the BBC film crew (if not others) were able to listen to otherwise privileged and confidential communications.

[16]The record does not reveal whether the prosecution was aware that defense counsel was wearing a body microphone.

acknowledgment by the defendant that he understood the risks involved in the arrangement, detailing any measures incorporated into the arrangement designed to protect the defendant against such risks, and confirming the defendant's approval.[17] In the absence of such a clear written statement, we remand the matter for an evidentiary hearing regarding such matters as what counsel and the defendant did discuss and what, if anything, the defendant approved. We vacate the order denying the defendant's motion for new trial and remand for further proceedings consistent with this opinion.

*So ordered.*

---

[17]Similarly, though it is apparent that all participants in the trial were aware that the trial was being filmed, the record does not establish whether the trial judge was informed that the attorney was equipped with a microphone that would capture private conversations with the defendant (and, for that matter, with the judge at sidebar). In any case where the defendant's counsel proposes to enter into such an arrangement, counsel should inform the trial judge prior to trial so that the judge may consider whether to conduct a colloquy into the nature, scope, and voluntariness of the defendant's consent to the arrangement, cf. *Commonwealth* v. *Martinez,* 425 Mass. at 392-393, and thereby avoid the difficulties inherent in conducting such an inquiry after the fact. See *Commonwealth* v. *Wooldridge,* 19 Mass. App. Ct. 162, 169-171 (1985).