## Commonwealth *vs.* Daniel Grant.

No. 08-P-1619.

Middlesex. March 4, 2010. - December 17, 2010.

Present: Mills, Green, & Katzmann, JJ.

*Practice, Criminal,* New trial, Findings by judge, Judicial discretion, Voir dire, Public trial, Instructions to jury. *Constitutional Law,* Public trial, Jury, Waiver of constitutional rights. *Waiver. Evidence,* First complaint.

This court concluded that remand was required for the holding of an evidentiary hearing and findings of fact on a criminal defendant's claim, asserted in a motion for new trial, that his wife and brother had been excluded from the court room during jury selection at his trial, in violation of his right to a public trial under the Sixth Amendment to the United States Constitution. [453-457]

At a criminal trial, the judge's conducting of individual voir dire of potential jurors in his chambers, with only the prosecutor and defense counsel participating, constituted a full closure of the court room in violation of the defendant's right to a public trial under the Sixth Amendment to the United States Constitution, where the judge made no specific findings on the record justifying the closure and did not consider any alternatives [457-458]; further, remand was required for the holding of an evidentiary hearing and findings of fact to determine whether the defendant knowingly waived his right to a public trial, where the judge did not inform the defendant of his right to a public trial and the record was unclear whether counsel so informed the defendant [458-461].

At a rape trial, neither the admission in evidence of testimony by the victim on direct examination that she told several people other than her first complaint witness about the rape, nor the admission of testimony of the victim's statements to a nurse, nor the introduction of testimony from police officers about the investigation created a substantial risk of a miscarriage of justice. [462-463]

At a criminal trial, the judge did not abuse his discretion in instructing the jury regarding the victim's right to pursue a civil action. [463-464]

Indictments found and returned in the Superior Court Department on March 30, 2006.

The cases were tried before *Herman J. Smith, Jr.,* J., and a motion for a new trial, filed on February 11, 2009, was heard by him.

*James A. Reidy* for the defendant.

*Denise J. Casper*, Assistant District Attorney (*Elizabeth A. Dunigan*, Assistant District Attorney, with her) for the Commonwealth.

KATZMANN, J. Having been convicted by a Superior Court jury of three counts of rape in violation of G. L. c. 265, § 22, the defendant appeals, contending that various trial errors warrant reversal. He also claims that his right to a public trial was violated during the general questioning and individual voir dire stages of jury empanelment, and that the motion judge (who was also the trial judge) erred in denying his motion for a new trial without an evidentiary hearing. We agree that there was a closure, in the constitutional sense, during the individual voir dire and that the judge did not make the findings required for closure. However, we remand for a determination whether the courtroom was closed during general questioning and, if so, whether it was de minimis. We also remand for a determination of whether the defendant waived his right to a public trial. We conclude that the defendant's other claims are not meritorious and do not constitute grounds for reversal.

I. *Public trial.* In his motion for new trial, which was filed nearly two years after his conviction, the defendant claims that his right to a public trial was violated when members of his family were excluded from the courtroom during general questioning of the venire and during individual questioning of potential jurors in the judge's chambers.

Jury selection took place on April 3 and 4, 2007, and two panels of jurors were necessary to achieve a jury of fourteen jurors. In the courtroom, after the venire was sworn and the indictments were read, the judge asked the general statutory voir dire questions: whether the jurors had any bias against or knowledge of the parties or the case, and whether jury service would pose a hardship. He instructed the jurors to raise their juror cards if they answered any of the questions affirmatively. There were only affirmative responses to the questions about knowing witnesses and jury service causing a hardship. The defendant was present in the courtroom throughout the general questioning.

After the judge completed the general questioning of the first

panel of potential jurors, he called counsel to sidebar, where the following exchange took place:

THE COURT:			"For the individual voir dire, does your client waive his right to be present?"

DEFENSE COUNSEL:	"He does, your Honor. I've spoken to him about it at the office and again just before you came out."

THE COURT:			"Okay. We'll do it in the lobby as we proceed."

The judge then conducted individual questioning of the potential jurors in his chambers — only the judge, prosecutor, and defense counsel participated in the proceedings. The proceedings were transcribed. During his individual questioning, the judge asked each of the jurors who indicated affirmative responses to the general voir dire questions in the courtroom to explain his or her answers and, at counsel's request, asked questions about his or her answer(s) on the jury questionnaires. Questions included inquiries of a nonsensitive nature,[1] as well as inquiries as to whether the potential jurors had been or knew someone, including family members or friends, who had been a

---

[1]Those nonsensitive questions asked by the judge included (1) "You may hear testimony that one or more witnesses have a history of using drugs or alcohol. Would that testimony affect your ability to be fair and impartial in this case?" (2) "You will hear testimony that the defendant in this case was working as a Massachusetts State Police Trooper when the alleged rape occurred. Would that information affect your ability to be fair and impartial in this case?" (3) "The law in this Commonwealth does not require an alleged victim to use physical force to resist from being raped. Would you be able to follow that principle of law?" (4) "Do you know, do you have any knowledge about any juror in the panel that you came up with?" (5) "Have you or anyone close to you ever worked for a rape crisis center or emergency room or any other type of victim service organization?" (6) "The defendant is a forty-six year old man, the father of three children. The Commonwealth alleges that the defendant perpetrated the acts alleged in the indictments while on duty and in uniform while as a Massachusetts State Trooper. The Commonwealth alleges that the defendant abused his position as a state trooper by threatening potential . . . incarceration of the alleged victim . . . if she refused to submit to demands of sexual conduct. Understanding the allegations that the Commonwealth is making, would you nevertheless be able to stand impartial and indifferent in this case and decide it only on the facts presented and under the law that I [the judge] give to you?"

victim of a violent or sexual crime, or had been accused of a violent or sexual crime. The judge also considered any motions from counsel to challenge a juror for cause. No objections were made to this procedure.

After conducting the individual voir dires of the first panel of jurors, the judge found that forty-one jurors were indifferent, one shy of the forty-two jurors he was seeking. In order to identify the forty-second juror, the judge questioned a second panel under the same two-part procedure of general questions in the courtroom followed by individual voir dire of a few potential jurors in chambers. Once the judge had found the forty-two jurors indifferent, the parties' counsel and the judge returned to the courtroom where counsel, in the presence of the defendant, exercised their peremptory challenges at sidebar until both parties were content.

A. *General questioning of potential jurors.* The defendant alleged in his motion for new trial that his wife and brother had been excluded from the courtroom during jury selection.[2] He attached affidavits from his wife[3] and brother.[4] His trial counsel also signed an affidavit that the defendant's wife and brother

[2]The defendant averred: "Jury selection in my trial began on April 3, 2007 and continued through April 4, 2007. On April 3, 2007, I was present in the courtroom with my attorneys, George Hassett and Michael Hanley. We were seated at the defendant's table. My wife, Laura Grant, and my brother, Tim Grant, were seated behind us in the audience section of the courtroom. They were the only family members or friends present in the courtroom. After the judge heard both the prosecution and my attorneys argue motions, the court began to prepare for jury selection. Court officers approached Laura and Tim and told them they had to leave the courtroom. Attorney Hassett told Laura and Tim that he thought they were closing the courtroom due to the size of the jury pool. He also said that if the court ordered the courtroom to be closed, they had to leave. Attorney Hassett did not tell me that I had a right to a public trial and that the exclusion of Laura and Tim from the courtroom could have been a violation of that right."

[3]Laura Grant averred: "Jury selection began on April 3, 2007 and continued through April 4, 2007. On April 3, 2007, I was seated in the courtroom when Dan's case was called. After motions, the judge ordered the courtroom to be cleared. Attorney Hassett told Tim and me that we had to leave the courtroom. He told us that the court needed the space to seat the jurors. I protested, telling Attorney Hassett that there were only two of us, Tim and myself. Attorney Hassett told me, 'Laura, if the judge orders the courtroom cleared, then the courtroom has to be cleared.' "

[4]Timothy Grant averred: "Jury selection began on April 3, 2007 and continued through April 4, 2007. On April 3, 2007, I was seated in the courtroom when

had told him that they had been asked by court officers to leave the courtroom.[5] The judge denied the motion without any written findings and without holding an evidentiary hearing.

"The decision to deny a motion for a new trial lies within the sound discretion of the judge and will not be reversed unless it is manifestly unjust or the trial was infected with prejudicial constitutional error." *Commonwealth* v. *Medina*, 430 Mass. 800, 802 (2000). See *Commonwealth* v. *Greineder*, 458 Mass. 207, 225 (2010). "A judge's subsidiary findings of fact will not be disturbed on appeal unless they are shown to be the result of a 'clear abuse of discretion or . . . were clearly erroneous.' " *Ibid.*, quoting from *Commonwealth* v. *Torres*, 437 Mass. 460, 469 (2002). Furthermore, we will give deference to the decisions of a motion judge who also served as trial judge. *Ibid.* "A defendant's submissions in support of a motion for a new trial need not prove the factual premise of that motion, but they must contain sufficient credible information to cast doubt on the issue. A judge may also consider whether holding a hearing will add anything to the information that has been presented in the motion and affidavits." *Commonwealth* v. *Goodreau*, 442 Mass. 341, 348 (2004) (citations & quotations omitted). "Where, as in this case, the new trial claim is constitutionally based we exercise our own judgment on the ultimate factual and legal conclusions." *Commonwealth* v. *Greineder*, *supra* at 225-226.

The Supreme Judicial Court has observed:

"The public trial right applies to jury selection proceedings, *Presley* v. *Georgia*, 130 S. Ct. 721, [725] (2010),

---

Dan's case was called. After motions, the judge ordered the courtroom to be cleared. Attorney Hassett told Laura and me that we had to leave the courtroom. He told us that the court needed the space to seat the jurors."

[5] The defendant's trial counsel averred: "Jury selection in the defendant's trial began on April 3, 2007 and continued through April 4, 2007. On April 3, 2007, the first day of jury selection, the defendant's wife, Laura Grant, and his brother, Tim Grant, were seated in the spectator section of the courtroom, behind the defense table. The court heard motions-in-limine that morning. After the motions, the court took a brief recess before bringing in the jury pool for jury selection. During this break, I was approached by Laura and Tim Grant concerning their remaining in the courtroom during jury selection. Laura and Tim Grant told me that the court officer stated that they had to leave. I stated to them 'I don't run the show. I'm not in charge of that.' Laura Grant and Tim Grant left the courtroom (to my knowledge)."

which are 'a crucial part of any criminal case.' *Owens* v. *United States*, 483 F.3d 48, 63 (1st Cir. 2007). . . . See *Commonwealth* v. *Gordon*, 422 Mass. 816, 823 (1996). At that stage, 'the primacy of the accused's right [to a public trial] is difficult to separate from the right of everyone in the community to attend the voir dire which promotes fairness.' *Press-Enterprise* v. *Superior Court*, 464 U.S. 501, 508 (1984). . . . The 'sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known' (emphasis in original). *Id.* Throughout a trial, an open court room 'enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.' *Id.* Thus, courts recognize a 'strong presumption in favor of a public trial,' *Commonwealth* v. *Baran*, 74 Mass. App. Ct. [256,] 294 [2009], 'overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.' *Press-Enterprise*, *supra* at 510."

*Commonwealth* v. *Cohen (No. 1)*, 456 Mass. 94, 106-107 (2010).[6] "The Sixth Amendment does not require members of the public to attend the trial. It prohibits their exclusion by the State, except in limited circumstances." *Commonwealth* v. *Greineder*, *supra* at 226. "In claiming that his Sixth Amendment [to the United States Constitution] right to a public trial was violated, '[t]he burden is clearly on the defendant to demonstrate that the public was excluded from his trial.' " *Commonwealth* v. *Cohen, supra* at 107, quoting from *Commonwealth* v. *Williams*, 379 Mass. 874, 875 (1980).

In *Commonwealth* v. *Edward*, 75 Mass. App. Ct. 162, 174 (2009), where the trial judge made a short statement at sidebar that the courtroom would be closed during direct and cross-examination of a child witness, we remanded for a hearing on

[6]*Presley* v. *Georgia, supra, Commonwealth* v. *Cohen, supra,* and *Commonwealth* v. *Greineder, supra,* were issued after the proceedings at issue here, and thus neither the judge nor the parties had the benefit of their guidance. The able appellate counsel for the Commonwealth and the defendant provided us with supplemental briefing on *Cohen* and *Presley* before the oral argument in this matter. We stayed our determination of this appeal until the issuance on November 4, 2010, by the Supreme Judicial Court of the opinion in *Greineder*, of which pendency was noted by the Commonwealth in its supplemental filing.

the defendant's motion for new trial, noting that "[a]lthough the defendant's affidavits suggest that the courtroom was closed, the contemporaneous record is silent on the subject and the affiants have not been examined." See *Commonwealth* v. *Greineder*, *supra* at 219 ("After oral argument . . . [the Supreme Judicial Court] . . . remanded the case to the trial judge for specific findings because 'the trial record does not otherwise present a sufficient factual record for meaningful consideration of the defendant's claim' [that a portion of the jury selection proceeding was closed to the public]"). Here, unlike in *Edward*, there is no indication in the record that the judge ordered the courtroom closed. As in *Edward*, the record is silent as to whether the public was actually excluded. The judge did not examine the affiants and made no factual findings as to whether members of the public had been excluded. The judge, moreover, made no finding regarding the allegation that a court officer had asked the affiants to leave. See *Commonwealth* v. *Cohen*, *supra* at 109 (where, "pursuant to an established policy, court officers told a number of individuals that they would not be permitted in the court room during the jury selection process[,] [t]he exclusion of members of the public and the press for at least three days of jury selection . . . cannot qualify as inadvertent . . . [or] so trivial . . . [that it falls] entirely outside the range of 'closure' in the constitutional sense"); *Commonwealth* v. *Greineder*, *supra* at 226 ("The ultimate question of fact before us is whether there was a court order or other official action that excluded the public . . . from [the court room]"). All in all, we conclude that the judge should have made a factual determination and held a hearing, if necessary, as to whether the courtroom was closed and the extent of such closure.[7] See *Commonwealth* v. *Williams*, *supra* at 876. See also *Commonwealth* v. *Greineder*,

[7]It appears that the general questioning took place over a short period of time. Compare *Owens* v. *United States*, *supra* at 63 (trial was allegedly closed for an entire day); *Commonwealth* v. *Cohen*, *supra* at 109 (members of the public and the press excluded for at least three days of jury selection).

The Supreme Judicial Court has observed approvingly that "[s]ome courts have determined that a court room closure may be so limited in scope or duration that it must be deemed 'de minimis' or trivial, and not in contravention of the Sixth or First Amendment [to the United States Constitution] public trial guarantees." *Commonwealth* v. *Cohen*, *supra* at 108. "[W]hether the closure was 'inadvertent' on the part of the judge is sometimes mentioned as one factor

*supra* at 219. Accordingly, we remand the case to the judge for specific findings as to whether there was any closure of the general voir dire and, if so, whether such closure was de minimis. *Ibid.*

B. *Individual questioning of potential jurors.* As has been noted, after general questioning of the venire, without objection and with the agreement of the defendant's attorney, the judge conducted individual questioning of the venire in the judge's chambers — only the judge, prosecutor, and defense counsel participated in the proceedings. Conducting the individual questioning in the judge's chambers constituted a full closure in the constitutional sense. See *Commonwealth* v. *Cohen, supra* at 110-111. The judge was thus required to make specific findings on the record justifying the closure, and to consider any alternatives before conducting the individual voir dire in his chambers. See *Presley* v. *Georgia*, 130 S. Ct. at 724-725.[8] See also *Commonwealth* v. *Cohen, supra* at 115. See generally *Commonwealth* v. *Baran*, 74 Mass. App. Ct. at 295-296; *Commonwealth* v. *Wolcott*, 77 Mass. App. Ct. 457, 463-465 (2010). The judge did not

relevant to the analysis." *Ibid.* In support of the de minimis proposition, the *Cohen* court stated the following: "See, e.g., *Peterson* v. *Williams*, 85 F.3d 39, 44 (2d Cir.), cert. denied, 519 U.S. 878 (1996) (finding de minimis closure where public excluded for twenty minutes, unknown to judge); *United States* v. *Al-Smadi*, 15 F.3d 153, 154-155 (10th Cir. 1994) (same). See also *Braun* v. *Powell*, 227 F.3d 908, 917-920 (7th Cir. 2000), cert. denied, 531 U.S. 1182 (2001) (excluding one person did not violate public trial right; court applied analysis of *Peterson* v. *Williams, supra*)." *Id.* at 108 n.20. The *Cohen* court also stated, "We agree with the principles discussed in the cases cited in note 20." *Id.* at 108.

Other than during jury empanelment, it is not claimed that there was any closure during the trial proceedings. If on remand the judge determines that there was closure during the general questioning of the venire, then he should determine whether it was de minimis. See *Peterson* v. *Williams, supra* at 44 (whether Sixth Amendment rights infringed must be determined in the context of the particular case).

[8]"[B]efore excluding the public from any stage of a criminal trial:

'[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.' [*Waller* v. *Georgia*, 467 U.S. 39,] 48 [1984]."

*Presley* v. *Georgia, supra* at 724.

make the required findings. Even if the judge could properly seek to protect the jurors' privacy because of the sensitive nature of the questions, conducting the individual voir dire in camera had the effect of concealing from the public the answers not only to sensitive questions, but also to nonsensitive questions, and was thus overly broad. Contrast *Commonwealth* v. *Jaynes*, 55 Mass. App. Ct. 301, 311 (2002) (no violation of right to public trial where "[t]he judge closed the courtroom only when a potential juror requested closure, and only during the discussion of the private matter"). "[A] closure may be 'no broader than necessary to protect [the] interest [likely to be prejudiced].' " *Commonwealth* v. *Cohen, supra* at 113, quoting from *Waller* v. *Georgia*, 467 U.S. 39, 48 (1984). See *ABC, Inc.* v. *Stewart*, 360 F.3d 90, 104-105 (2d Cir. 2004).

C. *Waiver.* Even where closure is effected in a manner that fails to satisfy the requirements of *Waller, supra,* and *Presley, supra,* that does not end the inquiry. "[A] defendant may waive [his] Sixth Amendment right." *Commonwealth* v. *Cohen, supra* at 116. "[W]e do look to whether the defendant raised this issue in a timely manner because 'the right to a public trial, like other structural rights, can be waived.' " *Id.* at 105-106, quoting from *Commonwealth* v. *Edward*, 75 Mass. App. Ct. at 173. See *Commonwealth* v. *Downey, ante* 224, 228-229 (2010). "Waiver requires a sound rationale for closure and the defendant's knowing agreement." *Commonwealth* v. *Edward*, 75 Mass. App. Ct. at 173. However, "the defendant's assent need not necessarily appear on the record." *Id.* at 173-174. See *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 340 n.1 (1994).

Here, as in *Commonwealth* v. *Edward, supra,* the defendant's knowledge of his right to a public trial is unclear. First, the defendant claims that he "did not know that the closure of the courtroom could have been a violation of my Sixth Amendment right to a public trial."[9] Second, as mentioned, the judge did not ask the defendant on the record whether he knowingly and

---

[9] In his affidavit in support of the motion for new trial, the defendant claims:

"I did not know that the closure of the courtroom could have been a violation of my Sixth Amendment right to a public trial.

"I also assumed that the judge's holding of individual voir dire in his chambers was the way things were done in Middlesex Superior Court. I

voluntarily waived his right to a public trial; it was the defendant's attorney who indicated, with respect to the individual questioning in chambers, that his client waived his right to be "present." Third, trial counsel's affidavit does not state whether he advised the defendant about the right to a public trial.[10]

Because the judge did not inform the defendant of his right to a public trial and the record is unclear whether the defendant's trial counsel so informed the defendant, "the component of the new trial motion dealing with closure presented a substantial question that required a hearing." *Commonwealth* v. *Edward*, *supra* at 174. See *Commonwealth* v. *Williams*, 379 Mass. at 876 (remanding for determination of waiver including "[a] the extent to which, if at all, the defendant's constitutional right to a public trial was waived by what may have been a trial tactic of counsel in this case, and [b] the extent, if any, of the defendant's understanding of his right to a public trial or of his waiver of that right"). See also *Commonwealth* v. *Downey*, 58 Mass. App. Ct. 591, 599-600 (2003) (remanding for hearing into whether there was a knowing and voluntary waiver of attorney-client privilege where defendant's assent "possible" and "record is silent on the topic").

We note that the defendant first raised the public trial issue in his motion for new trial, filed by appellate counsel nearly two years after the conviction.[11] "Failure of a defendant or his counsel to raise an objection when first made aware of an alleged public

---

had previously been in the jury pool in Norfolk Superior Court. There, the judge questioned individual jury members at side bar. I assumed that Middlesex and Norfolk just did things differently. I did not know that [the] decision to hold individual voir dire in the judge's chambers could have been a violation of my Sixth Amendment right to a public trial."

[10]Trial counsel's affidavit states, in pertinent part:

"I told the defendant that I believed it was better if he remain in the courtroom during individual voir dire and he agreed. I informed him of his right to be present during individual voir dire. The defendant, after consultation with counsel, waived his presence for the purposes of individual voir dire and did not object to it being held in the judge's chambers."

[11]The jury returned its three guilty verdicts on April 13, 2007. The defendant's motion was filed on February 11, 2009. The defendant's affidavit was dated January 6, 2009, and the affidavits of his wife and brother were dated November 26, 2008.

trial right violation is, at the very least, a strong indication of waiver." *Commonwealth* v. *Cohen, supra* at 118 n.35.[12] Here, trial counsel acknowledges in his affidavit that it was a strategic decision not to have the defendant present during the individual voir dire, but he does not address the question of the exclusion of the public in the judge's chambers during that portion of the jury selection.[13] If at jury selection the defendant were aware of his public trial right and that the empanelment procedure — with respect to both the general questioning (assuming there was closure) and the individual questioning — was in derogation of that right, the lapse of time before he raised the issue must be considered in determining waiver. Our conclusion that the defendant's knowledge at the time of trial may be determined on remand is consistent with the holding of *Commonwealth* v. *Wells*, 360 Mass. 846 (1971), also cited in *Commonwealth* v. *Cohen, supra* at 106, 118 n.35, that a defendant was not entitled to a new trial based on a violation of the public trial right where his lawyer testified at a hearing to facts showing that the defendant knowingly waived that right.[14] Accordingly, we remand the

[12]The *Cohen* court also observed: "There may well be tactical reasons — a favorable jury composition, for example — why a defendant and his counsel do not object to the exclusion of the public from his trial. . . . Cf. *Commonwealth* v. *Edward*, 75 Mass. App. Ct. 162, 174 (2009) (remanding for hearing to determine whether counsel had sound tactical reason for declining to object to partial closure of court room during complainant's testimony and whether defendant agreed)." *Commonwealth* v. *Cohen, supra* at 118 n.35. See *Commonwealth* v. *Horton*, 434 Mass. 823, 833 (2001) ("the less public setting for the voir dire in all likelihood helped rather than harmed the defendant").

[13]See note 10, *supra*. Contrast *Commonwealth* v. *Edward, supra* at 174 (remanding for determination of "whether the defendant agreed to the closure" and pointing out that defendant's affidavit "does not expressly state the defendant objected to closure, or even that he did not agree to it"). It is unclear here whether the defendant was informed that he was also waiving his right to have his family and other members of the public present during individual questioning. This is among the questions that need to be explored on remand.

[14]Moreover, this conclusion is consistent with our case law establishing that a court can look to the advice that a defendant received from his attorney in determining the voluntariness of a defendant's guilty plea. See, e.g., *Commonwealth* v. *Desrosier*, 56 Mass. App. Ct. 348, 355 (2002), quoting from *Commonwealth* v. *Nikas*, 431 Mass. 453, 457 (2000) ("[I]t does not matter whether a defendant acquires an understanding of the elements of the relevant crime or crimes from the judge, from his attorney, or in some other way. All

case for factual findings and a determination whether the defendant waived his right to a public trial.

II. *Other issues.* In the interests of judicial economy, we consider the other claimed errors raised by the defendant, all unpreserved, none of which gave rise to a substantial risk of a miscarriage of justice requiring reversal. If on remand the judge denies the motion for a new trial, and that ruling is either not challenged or upheld after any further appeal, the convictions will not be disturbed.

A. *Background.* We recount the trial evidence. Around 11:00 P.M. on January 20, 2006, the defendant, a uniformed State trooper driving a Massachusetts State police vehicle, flashed his overhead lights and approached a blue sedan parked near a hotel in Cambridge. The defendant observed that the occupants of the car — a man (Kenneth Lewis) and a woman (the victim) — were having sex. After knocking on the window, the defendant obtained identification from both individuals. He returned to his cruiser and had the Registry of Motor Vehicles run a check on the vehicle at 11:12 P.M. The vehicle was registered to the victim's husband. At 11:13 P.M., the defendant initiated a board of probation inquiry of the criminal history of Lewis. The inquiry revealed an outstanding warrant for Lewis's arrest.

Upon learning this information, the defendant, instead of arresting Lewis, returned to the vehicle and ordered him to leave the scene, giving him five dollars for public transportation.[15] The defendant then entered the victim's car, pulled out an ounce of cocaine from the belt area at the top of his pants, and threatened to arrest her if she did not do what he instructed. The victim, who had just been caught cheating on her husband and had struggled with drug problems for many years, knew that her family would not believe her if the defendant followed through on his threat. She obeyed his order to follow him in his police cruiser.[16] After

___

that is necessary is that the record show that, by some means, the defendant possessed enough comprehension to plead 'freely and understandingly' "); *Commonwealth* v. *Murphy*, 73 Mass. App. Ct. 57, 68 (2008).

[15]Proper police procedure would have been to arrest Lewis.

[16]In the course of doing so, she saw his license plate number, which she remembered as 808. Later investigation revealed that the defendant's cruiser number was 880 and that he was on duty in that cruiser on January 20, 2006.

they arrived at a nearby building,[17] the defendant ordered the victim into an office and raped her.[18]

The attack ended at around midnight. After the attack, the victim was terrified. She drove to her home in Stoneham and told her father that she had been raped by a police officer. She told him that two additional people were in the car, not just one, because she did not want to reveal her infidelity. She ran down the street to a friend's house in the middle of the night.

Eventually, in the early morning hours of January 21, 2006, the victim went to Winchester Hospital. A nurse told her about a rape kit and that police would be involved. The victim fled the hospital before any physical evidence could be collected. Next, the victim went to the Stoneham police station, where she asked for two specific police officers she knew and trusted. The Stoneham police told her she had to contact the Cambridge police, and her father came to the station to pick her up. By then, it was 3:20 A.M. and she went home instead.

Although the victim did not go to the Cambridge police, the Stoneham police reached out to them, and a Cambridge detective contacted the victim. The detective scheduled an interview with the victim alone for January 24, 2006, but the victim failed to appear because she believed she "couldn't go into a police station alone and feel safe after what just happened."

On January 27, 2006, one week after the attack, the victim was interviewed by the police. Subsequent investigation revealed no latent prints at the crime scene or the interior of the victim's vehicle. The defendant was arrested and on March 30, 2006, was charged with three counts of rape.

B. *Discussion.* 1. *First complaint issues.* On appeal, the defendant claims violations of the first complaint doctrine. See *Com-*

---

[17]Evidence at trial revealed that State troopers would use the building, which had been previously used by the Metropolitan Police but had been taken over by the Department of Conservation.

[18]Evidence of the rape also included the following. The victim testified that during the assault, she had observed what appeared to be two rings or one thick ring on the defendant's ring finger, and arresting officers observed that the defendant was wearing two gold rings on his left ring finger. Furthermore, the victim testified that she observed the defendant take off his zippered boots during the assault, and the defendant's State police boots, when recovered from his locker after the crime, had zippers.

monwealth v. *McCoy*, 456 Mass. 838, 845 (2010). Because the defendant failed at trial to object to the claimed erroneous admission of evidence when it was admitted, we review for a substantial risk of a miscarriage of justice.[19] See *Commonwealth* v. *Whelton*, 428 Mass. 24, 27 (1998). See generally Smith, Criminal Practice & Procedure § 33.9 (3d ed. 2007).

First, the defendant now contends that the victim's testimony on direct examination that she told several people other than her first complaint witness about the rape was reversible error. Even assuming that the testimony should not have been admitted on direct examination, because the defendant pursued throughout the trial a strategy (announced in his opening statement) of discrediting the victim's testimony and impugning her motives by highlighting her prior inconsistent statements, there was no substantial risk of a miscarriage of justice. See *Commonwealth* v. *McCoy*, 456 Mass. at 851.

Second, the defendant now objects to the admission of the testimony of the victim's statements to the nurse. This did not give rise to a substantial risk of a miscarriage of justice where it was on cross-examination, not direct, that the substance of the victim's statement to the nurse was elicited, and where it was only after this questioning that the Commonwealth elicited on redirect that the victim had told the nurse that she had been raped by the trooper. See *Commonwealth* v. *Kebreau*, 454 Mass. 287, 298-299 (2009); *Commonwealth* v. *Saunders*, 75 Mass. App. Ct. 505, 510 (2009).

Third, after defense counsel cross-examined the victim about her motivations in making allegations of rape, including that she considered filing a lawsuit, the introduction of testimony from police officers about the investigation did not give rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Arana*, 453 Mass. 214, 227 (2009).[20]

2. *Jury instruction*. After the defendant's closing argument, in

[19]The defendant also concedes that the errors here were not preserved by trial counsel.

[20]On appeal, the defendant also objects to a statement made by Lewis. Near the end of Lewis's direct examination, the Commonwealth asked, "[W]hen you got together with [the victim], where did the two of you go?" Lewis responded, "To where she said she was raped." Later, near the beginning of defense counsel's cross-examination, the judge, concluding that the testimony violated

which he argued that the victim was motivated by a lawsuit, the judge did not abuse his discretion in instructing the jury that the victim had a right "to be informed that [she has] a right to pursue a civil action." See G. L. c. 258B, § 3(*u*). The instruction did not remove from the jury's consideration the defendant's argument that the victim had a financial motive to fabricate, and did not invade the jury's province to assess credibility. Contrast *Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980). There was no prejudicial error.

*Conclusion.* We remand the case for (1) specific factual findings and determination whether there was any closure of the general voir dire and, if so, whether such closure was de minimis; and (2) specific factual findings and determination whether the defendant waived his right to a public trial.

*So ordered.*

---

the first complaint doctrine, called the attorneys to sidebar to discuss an instruction for the jurors to disregard the earlier statement. Defense counsel raised an objection to such an instruction, which the judge denied. The judge then instructed the jury to disregard the testimony. In light of the instruction, the limited extent of the evidence, the fact that the evidence was not admitted again, and the independent evidence corroborating the victim's testimony, we determine that the refusal to grant a mistrial did not constitute an abuse of discretion. See *Commonwealth* v. *Auclair*, 444 Mass. 348, 357 (2005).