NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12010


COMMONWEALTH  vs.  EDDY G. TEIXEIRA-FURTADO.


June 20, 2016.


Constitutional Law, Search and seizure.  Search and Seizure,
     Threshold police inquiry.  Threshold Police Inquiry.


        The defendant, Eddy G. Teixeira-Furtado, was a passenger in
a motor vehicle that was pursued and then stopped for traveling
at a "speed greater than is reasonable."  See G. L. c. 90, § 17.[1]
While the vehicle was still in motion, the defendant got out of
the vehicle, looked uncertainly in the direction of the police
officers, and grabbed the right side of his waist area.  The
police officers gave chase.  When the defendant was apprehended,
he was carrying a firearm.  A complaint issued in the Boston
Municipal Court charging the defendant with several firearm
offenses.  Before trial, a Boston Municipal Court judge allowed
the defendant's motion to suppress the evidence derived from the
encounter, and denied the Commonwealth's motion for
reconsideration.  A single justice of this court granted the
Commonwealth's application for leave to pursue an interlocutory

_____

        [1] General Laws c. 90, § 17, provides in part that "[n]o
person operating a motor vehicle on any way shall run it at a
rate of speed greater than is reasonable and proper, having
regard to traffic and the use of the way and the safety of the
public. . . .  If a speed limit has been duly established upon
any way, . . . operation of a motor vehicle at a rate of speed
in excess of such limit shall be prima facie evidence that such
speed is greater than is reasonable and proper; but,
notwithstanding such establishment of a speed limit, every
person operating a motor vehicle shall decrease the speed of the
same when a special hazard exists with respect to pedestrians or
other traffic, or by reason of weather or highway conditions."

appeal.  See Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996).  The Appeals Court reversed in an unpublished memorandum and order pursuant to its rule 1:28, Commonwealth v. Teixeira-Furtado, 87 Mass. App. Ct. 1133 (2015), and remanded for further proceedings.  We granted further appellate review.  We affirm the order allowing the motion to suppress.

Background.  The motion judge's findings establish that on the evening of November 23, 2012, three officers of the Boston police department's youth violence strike force, wearing plainclothes and traveling in an unmarked police vehicle, were patrolling areas of the city known as "hot spots" -- areas they knew to be gang affiliated and where guns had been recovered.  One officer observed a known gang associate park a vehicle and then enter a pizza store with the defendant.[2]  Approximately fifteen minutes later,

"the officers were on Bentham Road close to a stop sign facing Mt. Ida Road when they 'observed a car traveling at a speed greater than reasonable' on Mt. Ida.  The area is a residential one with 'plenty of kids around.'  It was nighttime.  The officers recognized the car as the Honda Accord that [the gang associate] had been driving earlier.  They activated the unmarked cruiser's lights and siren and went after the Honda Accord.  The car did not stop immediately but went about a block and then slowed down as if to pull over.  While the car was still in motion, the defendant exited the front passenger side.  He came toward the cruiser, went forward, turned, and came back again, as if he [did not] know where he wanted to go.  He was grabbing the right side of his waist area, which made the officers -- at least one of them having been trained in the characteristics of armed gunmen -- suspect that he might have a firearm in his possession.  The unit has rid the streets of Boston of numerous illicit firearms.

"The officers immediately gave chase.  About [forty] yards into the chase an officer caught up to the defendant.  Un-holstering his firearm, the officer ordered the defendant to show his hands.  The defendant stopped and said, 'All I have is a gun.'  He was wide-eyed and excited.  The officers secured his hands and removed a firearm from his right side, in the waist area."

_____

[2] There was uncontradicted testimony at the hearing on the motion to suppress that the time was about 7:45 P.M.

Discussion.  It is established that "[w]here the police have observed a traffic violation, they are warranted in stopping a vehicle."  Commonwealth v. Bacon, 381 Mass. 642, 644 (1980).  See Commonwealth v. Santana, 420 Mass. 205, 207 (1995). Although operating at a "speed greater than is reasonable" provides a basis for a valid stop, a police officer's suspicion that a violation has occurred must be supported by articulable facts sufficient to warrant a reasonably prudent person in the police officer's position in forming that conclusion.  See Commonwealth v. Torres, 433 Mass. 669, 672-673 (2001).  "A hunch will not suffice."  Commonwealth v. Wren, 391 Mass. 705, 707 (1984).

In this case, the police officer testified to his impression that the Honda Accord was "traveling at a speed greater than reasonable."  Although the officer's conclusory testimony tracked the statutory language, he failed to articulate specific facts on which his impression could be evaluated.  See Terry v. Ohio, 392 U.S. 1, 21-22 (1968) ("the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" intrusion).  Cf. Commonwealth v. Thomas, 451 Mass. 451, 452 (2008) (officer followed automobile for about one mile, and measured its speed as between eighty and eighty-four miles per hour); Commonwealth v. Twombly, 435 Mass. 440, 441-442 (2001) (officer followed defendant's vehicle for approximately three miles and estimated speed at fifty to fifty-five miles per hour in zones where limit was twenty-five and thirty-five miles per hour; also observed improper passing); Commonwealth v. Whynaught, 377 Mass. 14, 16-17 (1979) (judicially noting "radar speedmeter as an accurate and reliable means of measuring velocity"; observing that "opinion evidence, while admissible, may tend to leave doubts in the minds of judges and jurors").  Here, the Commonwealth offered nothing that would have permitted the motion judge to evaluate the reasonableness of the officer's conclusory statement that the speed was unreasonable.  Cf. Selibedea v. Worcester Consol. St. Ry., 223 Mass. 76, 79 (1916) (although plaintiff testified that vehicle was "going fast and that the speed was uniform," no evidence that speed "was unusual or improper").  The Commonwealth was not required to identify the vehicle's precise speed, but the testifying officer provided nothing on the subject of speed beyond his conclusion that it was greater than reasonable.  He did not, for example, estimate the vehicle's speed; compare its speed to the vehicle in which he was riding or to other vehicles; provide any measurement from a radar gun or other device; or testify that the vehicle was traveling

faster than the posted speed limit for that particular road and location.  Nor was there evidence presented regarding the traffic on the road, the use being made of the road at the time by pedestrians or others, or other relevant safety considerations.  See generally Commonwealth v. Bosworth, 257 Mass. 212, 217 (1926).

Conclusion.  When a motor vehicle is pursued and then stopped for a motor vehicle violation, both the passengers and the operator are seized for constitutional purposes.  See Commonwealth v. Quintos Q., 457 Mass. 107, 110 (2010).  Because the Commonwealth did not present evidence of articulated, specific, facts to support the officer's opinion that the vehicle was being driven at an unreasonable speed, the Commonwealth failed to prove that the stop was lawful and the evidence seized as a result of the stop must be suppressed.  See Commonwealth v. Cruz, 459 Mass. 459, 477 (2011).[3]

Order allowing motion to
suppress affirmed.

Sarah Montgomery Lewis, Assistant District Attorney, for the Commonwealth.
Rebecca Kiley, Committee for Public Counsel Services, for the defendant.

---

[3] We decline to consider the alternative ground urged by the Commonwealth to reverse the suppression ruling.  It contends that, regardless of the validity of the vehicle pursuit, the defendant's action in alighting from a moving vehicle, clutching his waistband, and fleeing from the scene constituted an "independent, intervening crime" that broke the chain of causation.  Compare Commonwealth v. Thibeau, 384 Mass. 762, 764 (1981).  The argument was raised by the Commonwealth for the first time in its motion for reconsideration, which the motion judge denied.  See Commonwealth v. Gilday, 409 Mass. 45, 46 n.3 (1991) (motion to reconsider not "appropriate place to raise new arguments inspired by a loss before the motion judge in the first instance").