NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-631

COMMONWEALTH

<u>vs</u>.

ADAM T. LICCARDI.

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 23.0</u>

A Superior Court jury convicted the defendant of two counts of aggravated rape and one count of rape.  A panel of this court affirmed the convictions but vacated a portion of the order denying a new trial and, as to certain information the Commonwealth erroneously withheld during discovery, remanded for the same judge who had presided over the trial and new trial motion to determine, in the exercise of his discretion, the effect that omitted evidence would have had on the collective or individual judgments of twelve lay people.  On remand, the judge denied the defendant's motion for a new trial after a nonevidentiary hearing, concluding that the undisclosed evidence "did not influence the jury, or had but very slight effect." See Commonwealth v. <u>Kostka</u>, 489 Mass. 399, 411 (2022).  The defendant requested reconsideration and the judge held an

evidentiary hearing at which the trial prosecutor, her second chair, the defendant's trial counsel, and a codefendant's trial counsel testified. Thirty-six exhibits were entered in evidence and considered by the judge. Applying the proper standard, the judge again denied the motion. The defendant appeals from the order denying his motion for a new trial. He also claims error in the prosecutor's closing argument, asserting that the issue was not addressed in his first appeal. Finally, the defendant appeals from the judge's order denying his motions for postconviction discovery. We affirm.

Background. We summarize the facts presented to the jury, reserving additional facts for later discussion. In the fall of 2012, the victim began her freshman year at the University of Massachusetts (UMass). Sometime between 11 P.M. and midnight on a Friday in October, the defendant and his three codefendants arrived uninvited at the victim's dormitory. Although none of the men attended UMass, security permitted them to enter the building. The victim knew the four men but had not invited them, and her friends had told them not to visit that evening. The four men entered the victim's room and spent several hours there consuming alcohol and marijuana that they had brought with them. The victim became so intoxicated that she could not sit up or walk without assistance. Eventually, the victim's friends carried her to bed. When they left to sleep in their own room,

2

the victim was unconscious or asleep.  Two of the men, including the defendant, remained in the victim's room and the other two returned a short time later.

The four men took turns sexually assaulting the victim in her room while she passed in and out of consciousness.[1]  After three of the men left, the victim again passed out.  She woke up to the defendant penetrating her vagina with his penis.

In the morning, the victim woke up in severe pain and with internal bleeding.  She told a friend that she was sexually assaulted by all four men.  Later that day, the victim exchanged text messages with one of the codefendants, Emmanuel Bile.  In one text message, the victim demanded $500 from the four men, "[o]r else I'm taking you to court."[2]  She also wrote, "Thank you all for raping me while I was passed out and couldn't move."  The following day, the victim reported the rapes to police and underwent a physical examination by a sexual assault nurse examiner at a nearby hospital.

During the police investigation, the defendant initially denied sexual contact with the victim.  He told a detective that

---

[1] Separate juries convicted each codefendant of aggravated rape.

[2] The victim testified that she demanded the money because she did not want anyone, particularly her parents, to know about the rapes, but she wanted to be able to pay for her resulting medical expenses.

3

he kissed the victim at the same time his codefendant Justin King had consensual vaginal sex with her.  After the defendant was informed that the victim had undergone a sexual assault examination, he admitted to the detective that all four men penetrated the victim's body with their penises, sometimes simultaneously.  The defendant acknowledged that his penis penetrated the victim's mouth and vagina and stated that "it [w]as a group thing."  He admitted that the victim cried while he was penetrating her vagina.

The defense at trial was that the victim was raped by Bile, but any sex acts with the defendant were consensual and the victim lied about being raped by all four men because she wanted money.

Discussion.  1.  Motion for a new trial.  We review a judge's decision on a motion for new trial for error of law or abuse of discretion.  See Commonwealth v. Tavares, 491 Mass. 362, 365 (2023).  Where, as here, the motion judge was also the trial judge, "we give special deference to the judge's findings of fact and the ultimate decision on the motion" (quotation and citation omitted).  Commonwealth v. Corey, 493 Mass. 674, 684 (2024).

a.  Egregiousness of the prosecutor's failure to disclose the presentment letter.  "Due process of law requires that the government disclose to a criminal defendant favorable evidence

4

in its possession that could materially aid the defense against the pending charges."  Commonwealth v. Tucceri, 412 Mass. 401, 404-405 (1992).  A panel of this court concluded that the Commonwealth erroneously failed to disclose that, nearly two years after the rapes, the victim's attorney sent a presentment letter to the Attorney General's office as notice of the victim's intent to file a lawsuit against UMass and other government entities for damages resulting from the rapes.[3]

The defendant first contends that the discovery violation was so egregious that he should not have been required to demonstrate prejudice.[4]  "[P]rosecutorial misconduct that is egregious, deliberate, and intentional, or that results in a violation of constitutional rights may give rise to presumptive prejudice" (citation omitted).  Committee for Pub. Counsel Servs. v. Attorney Gen., 480 Mass. 700, 724 (2018).  This "theory should be narrowly applied, and confined to situations

---

[3] Under G. L. c. 258, § 4, a potential plaintiff in a civil lawsuit against a public employer must make presentment of their claim to the Attorney General's office within two years after the date on which the cause of action arose, or else they are precluded from recovering any damages awarded in a trial

[4] The defendant raised this argument for the first time in support of his motion for reconsideration of the order denying his motion for a new trial.  Although the Commonwealth does not assert that the argument is waived, we note that a motion for reconsideration is not an "appropriate place to raise new arguments inspired by a loss before the motion judge in the first instance" (citation omitted).  Commonwealth v. Teixeira-Furtado, 474 Mass. 1009, 1012 n.3 (2016).

5

where the misconduct has cast such doubt . . . as to poison the entire investigation, and a stronger deterrent is warranted to prevent repetition of such misconduct" (quotations and citation omitted).  Id.

The prosecutor's failure to disclose her knowledge of the presentment letter was error.  However, the judge credited the prosecutor's motion hearing testimony that she did not connect the defendant's discovery request to her conversation with the victim's attorney about presentment.  He found that the trial prosecutor "showed through her conduct that she is a competent and ethical prosecutor."  Further, the judge determined that the Commonwealth's failure to provide the presentment letter was unintentional.  Given the ample evidence supporting the judge's findings, and the defendant's failure to present evidence that the prosecutor's actions were deliberate or intentional, we decline to disturb those findings.  See Commonwealth v. Grant, 78 Mass. App. Ct. 450, 454 (2010) (judge's subsidiary findings of facts not to be disturbed unless shown to be result of clear abuse of discretion or clear error).  Thus, we discern no abuse of discretion in the judge's conclusion that the discovery violation was not egregious, deliberate, or intentional.  See Committee for Pub. Counsel Servs., 480 Mass. at 724.  The defendant was not relieved from his burden of demonstrating prejudice resulting from the nondisclosure.

6

b. Prejudice to the defendant from nondisclosure of the presentment letter. The defendant next argues that he demonstrated prejudice from the nondisclosure of the presentment letter. Absent prosecutorial misconduct, to prevail on his motion for a new trial, the defendant must have shown that a "substantial basis exists for claiming prejudice from the nondisclosure" of the specifically requested evidence. Commonwealth v. Bateman, 492 Mass. 404, 419 (2023), quoting Commonwealth v. Lykus, 451 Mass. 310, 326 (2008). "The verdict and judgment must be set aside unless the reviewing court's 'conviction is sure that the error did not influence the jury, or had but very slight effect.'" Bateman, supra, quoting Commonwealth v. Ellison, 376 Mass. 1, 24-25 (1978).

The defendant asserts that trial counsel could have used the presentment letter to demonstrate that the victim had a financial motive to lie. In fact, trial counsel vigorously pursued financial motive impeachment, to no avail. Among other attempts to undermine the victim's credibility, trial counsel cross-examined the victim about her demand for money from the defendants. The defendant also introduced the text message from the victim demanding $500. Defense counsel closed, in part, by arguing that the victim's allegations were "about money. She wanted $500. She made a demand for $500." As the judge stated, "[a]t trial, zealous and experienced trial counsel for the

7

defendant, extensively and vigorously, cross-examined the victim . . . on her demand for money." There is no prejudice where undisclosed evidence "would have served only as weak and cumulative impeachment evidence." Commonwealth v. Watkins, 473 Mass. 222, 232 (2015).

The judge fully considered the separate impact the presentment letter might have had on the jury and concluded it would not have materially aided the defense. As the person who saw the evidence and the jury, the judge was in the best position to make this assessment and we defer to his view. Tucceri, 412 Mass. at 409. We agree with the judge that the letter was of limited usefulness, because the defendant would have had to argue to the jury that the victim falsely accused all four men of rape to reap rewards from a civil lawsuit against UMass that she still had not filed two years after the fact -- even though such a suit would have required her to meet only a civil standard of proof and would not be dependent on any of her assailants having been criminally convicted. Moreover, the defendant did not dispute that the victim was raped, only that his own acts were consensual.[5] As the judge put it, "[o]n this record, evidence that a college student who was raped in

---

[5] The defendant testified that he stood and watched as Bile, who was ultimately convicted of two counts of aggravated rape, raped the victim.

8

her dorm room intends to file a tort lawsuit against her school does not undercut the strong evidence that she was raped." See Commonwealth v. Drayton, 479 Mass. 479, 490 (2018) ("evidence that tends merely to impeach the credibility of a witness will not ordinarily be the basis of a new trial" [citation omitted]).

In addition, the judge considered the value of the presentment letter in the overall context of the trial evidence. He found that "the jury heard . . . overwhelming evidence of the [victim's] inability to have consented to sex." This amply supports his decision not to grant the defendant a new trial. See Drayton, 479 Mass. at 490 (order denying motion for new trial on basis of newly discovered evidence affirmed where case against defendant overwhelming); Lykus, 451 Mass. at 330 (nondisclosure does not warrant new trial where case against defendant overwhelming). Indeed, in addition to the victim's testimony, two witnesses whom the judge concluded "ha[d] not been shown to have had any financial or other incentive to lie" testified that when they left the victim with the defendant, she was so intoxicated that she could not walk without assistance and appeared to be unconscious.[6] The judge also considered the defendant's contention that the presentment letter might have

---

[6] The judge properly rejected the defendant's speculation that the witnesses might also have had financial motives rooted in the UMass lawsuit.

9

led to information that would have bolstered trial counsel's impeachment of the victim by showing that her financial motive "snowballed" from the $500 demand to a request for victim compensation and assistance division (VCAD) funds to, ultimately, a lawsuit against UMass. According to the defendant, the victim may have maintained her ruse for years in order to receive VCAD funds "for services that were unrelated to the alleged rapes." Correctly applying the prejudice standard applicable when evidence not specifically requested has been erroneously withheld, the judge concluded that there was not a substantial risk that evidence relating to the VCAD fund request would have impacted the jury's decisions. He reasoned that such evidence likely would have exposed the jury to "the financial burdens [the victim] incurred as a result of the rapes, including the cost of therapy," and that in any event if the victim did receive VCAD funds, it could only be because VCAD had concluded she "was, in fact, the victim of a crime and that she suffered personal physical or psychological injury as a direct result." Moreover, as discussed above, the jury did hear other evidence that, according to the defendant, showed that the victim fabricated the rapes to get money.

The defendant further contends that if trial counsel had possessed the presentment letter, he might have changed his trial strategy. Trial counsel's 2020 affidavit stated that with

10

that letter he "may have shifted" the defense more toward undermining the victim's credibility, "may have advised" the defendant not to testify,[7] and "would have considered" not introducing the victim's text message demanding $500 in evidence.[8]  The defendant now argues that the judge abused his discretion by failing to consider the impact these hypothetical changes in trial counsel's strategy might have had on the jury when taken together with supposed improprieties in the prosecutor's closing argument.  We are aware of no legal authority to support this proposition, nor did the defendant cite any in the six lines he dedicated to it in his brief.  Instead, the defendant relies on three cases he provided in a post oral argument letter:  Commonwealth v. Pope, 489 Mass. 790 (2022); Commonwealth v. Ellis, 475 Mass. 459 (2016); and

---

[7] It is noteworthy that by the time the defendant testified, the jury already had heard evidence of the self-incriminating and inconsistent statements he made to police about his sexual acts.

[8] We note the contrast between this noncommittal language and counsel's statement in the same affidavit that, if he had the presentment letter at the time of trial, he "would have" used the letter itself in specific ways.  At the 2022 hearing on the motion for reconsideration, counsel testified that he "most likely" would have modified his trial theory, but he explained this by stating that the presentment letter itself would have provided "more meat on the bone."

Commonwealth v. Daniels, 445 Mass. 392 (2005).[9] These cases are readily distinguishable from the present case.

In Pope, 489 Mass. at 805, withheld documents contained inconsistent statements from a witness who was the "linchpin of the Commonwealth's entire case." The documents would have supported the defendant's strategic focus on the witness's credibility and cast doubt on the police investigation. Id. at 801, 804-805. The court concluded it was "likely" counsel would have used the documents to impeach the key witness, id. at 803, and "quite likely" counsel would have used them to present a "Bowden defense." Id. at 804, citing Commonwealth v. Bowden, 379 Mass. 472, 486 (1980).

In Ellis, 475 Mass. at 465-466, evidence discovered after the defendant's murder conviction showed that the victim participated in crimes of police corruption with several Boston police detectives who investigated the victim's homicide. The court concluded that, with this evidence, "a reasonable jury likely would have had diminished confidence in the integrity and thoroughness of the police investigation in general." Id. at 479. Although the court made a passing reference to what else counsel could have done differently at trial had he known of the relationship between the victim and the detectives, its analysis

---

[9] See Mass. R. A. P. 16, as appearing in 481 Mass. 1628 (2019).

12

was fundamentally an evaluation of the impact the newly discovered evidence would have had on the jury.  Id. at 478-479.

Finally, in Daniels, 445 Mass. at 407, an eyewitness identification of the defendant "was the peg on which the defendant's conviction hung or fell."  The defendant appealed from a judge's order denying a request for posttrial discovery based on newly discovered information that concerned the credibility of the identification.  Id. at 392, 400 & n.21.  The court explained that the prejudice standard applicable to a new trial motion based on the erroneous withholding of specifically requested evidence is due in part to the impact of such withholding on defense counsel's strategic decisions.  Id. at 404-405.  However, the court had no difficulty agreeing that on the record before it, the defendant's new trial motion had been properly denied, i.e., the standard had not been met.  Id.  The court's principal focus was instead on the standard for posttrial discovery based on newly discovered evidence, which requires in pertinent part that a defendant "make specific, not speculative or conclusory, allegations that the newly discovered evidence would have materially aid[ed] the defense" (quotation and citation omitted; emphasis added).  Id. at 407.

In each of these cases, the undisclosed evidence related to a material aspect of a critical witness's testimony in an otherwise weak case.  Here, in contrast, the undisclosed

13

evidence was only "weak and cumulative impeachment evidence." Watkins, 473 Mass. at 232. As the judge found, "[t]he presentment letter did not corroborate the defendant's story, did not cast doubt on any material element of the prosecution's version of events, and did not diminish the credibility of key prosecution witnesses." In addition, to the extent Pope, Ellis, and Daniels touch on trial tactics, they do not suggest that a defendant's speculative claim in hindsight regarding the impact of undisclosed evidence on a potentially different trial strategy is enough to establish "a substantial basis . . . for claiming prejudice from the nondisclosure" (citation omitted). Bateman, 492 Mass. at 419.

While we acknowledge the possibility that in appropriate circumstances a defendant may be able to establish prejudice based on a properly supported claim of impact on trial strategy, this is not that case. Here, the defendant relied on the 2020 affidavit of trial counsel filed in support of his motion for reconsideration, which stated only that counsel "would have considered" strategic changes, "may have advised" the defendant not to testify, "may have shifted" the defense, and "may have relied more heavily" on a different theme if he had the presentment letter. This speculative language falls well short of what is required for the defendant to establish a substantial

14

basis that undisclosed evidence caused prejudice.[10]  Cf.

Commonwealth v. Clarke, 460 Mass. 30, 47 (2011) (where defendant

sought to vacate plea on basis that he "would not" have pleaded

guilty but for counsel's errors, "[a]t a minimum . . . the

defendant must aver that to be the case").  A new trial is not

warranted based on assertions that it may, possibly, be

conducted differently than the initial trial.

We thus discern no error or abuse of discretion in the

judge's fully considered conclusion that the presentment letter

"did not influence the jury or had but very slight effect."  See

Bateman, 492 Mass. at 419.

2.  Closing argument.  The defendant challenges the

prosecutor's closing argument on five grounds.  Because the

defendant objected to the first two challenged remarks, "we

evaluate whether the defendant was prejudiced [by any improper

remarks], considering the remarks in the context of the entire

argument, the trial testimony, and the judge's instructions to

the jury."  Commonwealth v. Beaudry, 445 Mass. 577, 584 (2005).

First, the defendant asserts that the prosecutor improperly

vouched for the victim's credibility when she stated that the

_____

[10] Although the judge did not specifically address the
credibility of these assertions, it is notable that trial
counsel did not make them in his 2017 affidavit, which was the
basis for the initial new trial motion as well as the motion on
remand.

15

victim "ha[d] no reason to lie."[11]  Although a prosecutor may not argue that a victim is credible simply because she appeared to testify in court, Beaudry, 445 Mass. at 587, "a prosecutor may marshal the evidence in closing argument to urge the jury to believe the government witnesses and disbelieve those testifying for the defendant" (quotation and citation omitted). Commonwealth v. Polk, 462 Mass. 23, 39 (2012).  Here, the prosecutor properly argued from the evidence that the victim had no motive and little time to formulate a lie to her friend, the morning after, that all four men had raped her.  The prosecutor did not exceed the bounds of permissible advocacy by asserting that the victim's version of events was more plausible than the defendant's version.

The defendant's second claim of error is that the prosecutor misstated the evidence by arguing that the defendant had testified that the victim was sober at the time of the rapes.  "In closing argument, [p]rosecutors are entitled to marshal the evidence and suggest inferences that the jury can draw from it" (quotation and citation omitted).  Commonwealth v.

---

[11] The Supreme Judicial Court has found nothing improper in a prosecutor's argument that witnesses had no motive to lie, where the defendant's closing had attacked those witnesses' credibility.  See Commonwealth v. Smith, 450 Mass. 395, 408, cert. denied, 555 U.S. 893 (2008); Commonwealth v. Helberg, 73 Mass. App. Ct. 175, 179 & n.5 (2008); Mass. G. Evid. § 1113(b)(2) & note (2024).

16

Parker, 481 Mass. 69, 74 (2018). Here, although the defendant did not testify in so many words that the victim was sober, he stated that the victim was awake, had no difficulty walking, did not slur her speech, and did not appear unusual in any way. Where ample evidence supported the prosecution's theory that the victim was too intoxicated to consent to sexual intercourse, the prosecutor was entitled to marshal that evidence to rebut the defendant's testimony. See Commonwealth v. Barbosa, 477 Mass. 658, 670-671 (2017) ("[T]he prosecutor's remarks were characteristic of enthusiastic rhetoric, strong advocacy, and excusable hyperbole" [quotation and citation omitted]).

Because the defendant did not object to the remaining three challenged remarks, we review any error for a substantial risk of a miscarriage of justice. See Commonwealth v. Shruhan, 89 Mass. App. Ct. 320, 326 (2016). "The defendant has a considerable burden to demonstrate that an alleged error, or combination of errors, by the prosecutor in the closing argument, caused a substantial risk of a miscarriage of justice." Id.

The defendant asserts that the prosecutor misstated evidence when she argued that the defendant's testimony -- that his codefendant, Caleb Womack, did not have sexual contact with the victim -- was contradicted by the fact that Womack's deoxyribonucleic acid (DNA) was found on the comforter of the

17

bed. The defendant testified that Womack sat on the bed at one point. The Commonwealth's expert testified that the DNA found on the comforter was not necessarily from sperm cells. Still, the prosecutor's statement that the DNA was deposited during Womack's rapes of the victim was a reasonable inference from the evidence and thus fair argument. See Commonwealth v. Roy, 464 Mass. 818, 824 (2013) (inferences need only be reasonable and possible, not necessary or inescapable).

The defendant further contends that the prosecutor misstated evidence by saying that the defendant did not want to pay any portion of the $500 because he "took care of the problem" and "chilled her . . . out." The prosecutor extrapolated from one of Bile's text messages to King, where he stated that the defendant did not want to pay the victim. The defendant does not dispute that the text message "represented [that the defendant] was not willing to pay." Additionally, based on the defendant's testimony, the defendant argued in closing that he comforted the victim after the rapes. The prosecutor merely inferred that the defendant was unwilling to pay because he believed that he comforted the victim after the rapes. Again, this statement essentially asked the jury to draw a fair inference from the evidence. See Roy, 464 Mass. at 824.

Finally, the defendant contends that the prosecutor overstepped by arguing that the defendant did not want his

18

statement to police recorded so that there would be no evidence that he altered his version of events. The defendant refused to be recorded, his testimony contradicted the interviewing detective's version of the statement, and the accuracy of the detective's version was challenged on cross-examination and in closing because he did not have a recording to corroborate his version of the statement. The defendant also directly challenged the detective's version of the unrecorded interview. Once again, the prosecutor's remarks were a fair argument, asking the jury to draw a reasonable inference from the evidence. There was no error, and no substantial risk of a miscarriage of justice.

3. Denial of discovery and rule 17 requests. The defendant further appeals from the order denying his motions for postconviction discovery pursuant to Mass. R. Crim. P. 30 (c) (4), as appearing in 435 Mass. 1501 (2001). We uphold discovery rulings, "unless the appellant can demonstrate an abuse of discretion that resulted in prejudicial error" (citation omitted). Commonwealth v. Torres, 479 Mass. 641, 647 (2018). "Discovery in the context of a new trial motion under [rule 30 (c) (4)] is not a matter of right." Commonwealth v. Arriaga, 438 Mass. 556, 569 (2003). "A defendant cannot use a motion for postconviction discovery to engage in a fishing expedition" (quotation omitted). Commonwealth v. Ware, 471

19

Mass. 85, 94 (2015).  Rather, the defendant "must make a sufficient showing that the discovery is reasonably likely to uncover evidence that might warrant granting a new trial" (citation omitted).  Id.

Here, the defendant's postconviction discovery motions sought the prosecutor's notes from two meetings with the victim, the victim's counseling and medical records, the victim's health insurance records, and records from the law firm representing the victim in her civil suit against UMass.  The defendant asserts that these records could reveal impeachment evidence and evidence of prosecutorial misconduct.  Because he offers only speculation regarding what he hopes to find in such records, the defendant "has not demonstrated sufficiently that [the sought-after] evidence actually existed."  Commonwealth v. Camacho, 472 Mass. 587, 600 (2015).  Further, the defendant made no showing that additional impeachment evidence would have "materially benefited the defense and would have factored into the jury's

deliberations." <u>Id</u>. at 598.  Thus, the judge properly denied the defendant's motions for postconviction discovery.

<u>Orders denying motions for a new trial and for postconviction discovery affirmed</u>.

By the Court (Neyman, Sacks & Brennan, JJ.[12]),

Clerk

Entered:   September 30, 2024.

---

[12] The panelists are listed in order of seniority.