NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-142

COMMONWEALTH

vs.

MATTHEW DAVIS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a Superior Court jury trial, the defendant was found guilty of unlawfully carrying a firearm, and after a jury-waived trial, he was found to have been previously convicted of a "serious drug offense" and thus subject to a sentence enhancement under G. L. c. 269, § 10G (a), the Massachusetts Armed Career Criminal Act (ACCA). On appeal, the defendant makes four arguments: (1) his motion to suppress the firearm found in his car was erroneously denied; (2) there was insufficient evidence that he constructively possessed the firearm; (3) at the sentence enhancement trial, the judge erroneously admitted identification evidence; and (4) the judge erred in denying him sentencing credit for certain "dead time"

served in Federal custody.  We affirm the judgment but reverse the order on the defendant's motion for jail credits, vacate the sentence, and remand the case for recalculation of the sentence.

1. <u>Motion to suppress</u>.  Boston police officers patrolling Columbia Road pulled over a car that was speeding and had excessively-tinted windows.  The officers, each with a body-worn camera (BWC) activated, approached the car and found the defendant in the driver's seat and a woman he identified as his fiancé in the front passenger seat.[1]  As explained in more detail <u>infra</u>, the officers eventually pat frisked the defendant, performed a protective search of the car for weapons, and located a firearm in a "fanny pack" on the floor behind the front passenger seat.  The defendant was arrested and charged with, among other offenses, unlawfully carrying a firearm.  The defendant moved to suppress the fanny pack and firearm on the ground that the car search was unjustified.  After an evidentiary hearing at which the officers testified and the BWC footage was admitted, a judge denied the motion.

In reviewing a ruling on a motion to suppress, "we adopt the motion judge's factual findings absent clear error," <u>Commonwealth</u> v. <u>Isaiah I.</u>, 450 Mass. 818, 821 (2008), and

---

[1] By the time of trial, the defendant and his fiancé were no longer engaged.  For clarity, we refer to her as his fiancé throughout.

2

"conduct an independent review of his ultimate findings and conclusions of law."  Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002).  We "may supplement a motion judge's subsidiary findings with evidence from the record that is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony . . . so long as the supplemented facts do not detract from the judge's ultimate findings" (quotations and citations omitted).  Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).

A Terry-type protective search of a vehicle for weapons is justified if officers have reasonable suspicion, based on specific and articulable facts, that a recent occupant is "dangerous" and might access the vehicle to "gain immediate control of weapons."  Michigan v. Long, 463 U.S. 1032, 1048-1050 (1983), citing Terry v. Ohio, 392 U.S. 1, 21 (1968).  See Commonwealth v. Torres-Pagan, 484 Mass. 34, 38-39 (2020); Commonwealth v. Darosa, 94 Mass. App. Ct. 635, 645 (2019).  Here, the defendant contends that the officers lacked such reasonable suspicion.  We are unpersuaded.  The factors supporting reasonable suspicion here included the defendant's delay in pulling over after police activated their blue lights, which police called a "slow roll"; police knowledge of his pending charges involving assault with a firearm; and the

3

unusual position of the front seats in his car, which could support an inference that he was hiding contraband.

a. <u>Slow roll</u>. The motion judge found that when the officers activated their cruiser's blue lights, despite there being "plenty of space for the [defendant's] car to pull over," the defendant did not do so immediately, but instead kept driving, slowly and for a significant distance, before stopping. The officers believed that the occupants were using this slow roll in order to gain time to hide contraband.

The defendant first argues that the record does not support the finding that he could have pulled over earlier. The officers testified, however, that it was 12:30 A.M., traffic was not heavy, Columbia Road is "a very wide street . . . two lanes of traffic with a bike lane and a lane for cars to park on the side of it [with] ample amount of room for a vehicle to pull to the right of the road," and so "[t]here was no reason that [the car] did not pull over right away."[2] Yet the defendant continued driving for at least a full city block.

The defendant further asserts that, because there were cars in the parking lane, he could not pull over until he found space

_____

[2] From the BWC footage and other evidence at the hearing, the judge could have found that the officer's description referred to one half of Columbia Road, i.e., that in the direction the defendant was driving, there were two travel lanes, a bicycle lane, and a parking lane.

4

directly adjacent to the curb.  But neither officer testified

that this was what they meant by failing to pull over, nor is it

what State law provides.[3]  And the officers were not required to

identify some specific location where the defendant could have

pulled over earlier.  This case is unlike Commonwealth v.

Teixeira-Furtado, 474 Mass. 1009, 1011 (2016), cited by the

defendant, where "conclusory" police testimony that a car was

traveling at "a speed greater than reasonable," although it

"tracked the statutory language," was not based on any

"articulate[d] specific facts" and thus was insufficient to

support a traffic stop.  Here, specific police testimony

supported the judge's finding that police reasonably believed

the defendant could have pulled over earlier, even if not

completely out of the right-hand travel lane.

The defendant also argues that his actions were "consistent

with simply looking for a safe place to pull over" and therefore

were not suspicious.  But that a particular action may be

---

[3] By statute, "upon the approach of any . . . police vehicle
. . . which is going to a fire or responding to call, alarm or
emergency situation, every person driving a vehicle on a way
shall immediately drive said vehicle as far as possible toward
the right-hand curb or side of said way and shall keep the same
at a standstill until such . . . police vehicle . . . has
passed" (emphasis added).  G. L. c. 89, § 7A.  Although the
defendant points out that stopping in a bicycle lane is
prohibited, this is subject to an "except[ion] in a case of
emergency."  G. L. c. 89, § 4D.

"consistent with any number of innocent activities," Commonwealth v. Barreto, 483 Mass. 716, 721 (2019), does not mean the action cannot contribute to reasonable suspicion.

> "An officer does not have to exclude all the possible innocent explanations for the facts in order to form a reasonable suspicion [and we] do not examine each fact known to [the officer] at the time of the stop in isolation; instead [a court] view[s] the 'facts and inferences underlying the officer's suspicion . . . as a whole when assessing the reasonableness of his acts.'"

Isaiah I., 450 Mass. at 823, quoting Commonwealth v. Thibeau, 384 Mass. 762, 764 (1981).

The defendant next claims that the officers were required to, but did not, testify to the specific training or experience they relied on to conclude that the slow roll was a sign of an attempt to hide contraband.  For this the defendant cites the statement in Commonwealth v. Matta, 483 Mass. 357, 366 n.8 (2019), that "ordinarily, when an officer relies on his or her training and experience to draw an inference or conclusion about an observation made, the officer must explain the specific training and experience that he or she relied on and how that correlates to the observations made."  Yet in Matta, supra, it was enough for an officer to testify "that in his experience people carry unlicensed firearms in their waistband"; this sufficed to allow "the fact that the defendant clutched his waistband as he ran [to] be considered as part of the reasonable

6

suspicion calculus."  Here, similarly, the officer testified that in his experience, when a vehicle slow rolls on a street on which there is nothing preventing the vehicle from pulling over to the right, "it raises a red flag that someone may be trying to conceal something in the vehicle."  This had "occurred in the past, in [the officer's] experience."  Such testimony is little different from that accepted in Matta.

Moreover, in the reasonable suspicion context no less than when the question is the sufficiency of the evidence, "[a]n inference, if not forbidden by some rule of law, need only be reasonable and possible; it need not be necessary or inescapable."  Commonwealth v. Beckett, 373 Mass. 329, 341 (1977).  It requires no special training or experience, but instead only common sense, to draw the permissible (even if not required) inference that a person who continues to drive slowly for at least a block after police activate their blue lights is a person who is seeking to delay or avoid an interaction with police.  We therefore conclude that the defendant's slow roll could properly be considered as contributing to reasonable suspicion that the defendant was hiding a weapon or contraband in the car.

b.  Recent activity with firearms.  The motion judge found that the officers were aware, before the patfrisk of the car,

7

that the defendant had "an open firearms case involving violence."  One officer had run the defendant's board of probation (BOP) record and learned that only two weeks earlier, the defendant had appeared in District Court in connection with "a domestic violence issue involving him brandishing a firearm." The charges against the defendant included assault with intent to murder, assault with a dangerous weapon, and threatening.

The defendant rightly asserts that "a suspect's criminal record alone will not justify a patfrisk."  Commonwealth v. Garner, 490 Mass. 90, 93 (2022).  Nevertheless, "[k]nowledge that a suspect's criminal record includes weapons-related offenses may factor into the reasonable suspicion calculus." Id. at 92.  Although the defendant here had not been convicted, arrests may be considered in determining reasonable suspicion. Commonwealth v. Elysee, 77 Mass. App. Ct. 833, 841-842 (2010). We conclude that the officers' knowledge of the pending charges contributed to reasonable suspicion that the contraband the defendant was hiding was a firearm and that he might use it in a dangerous manner.

c.  Seat positions.  The unusual, sharply reclined positions of both the driver's and front passenger seats, as shown in video and photographs introduced at the suppression hearing, further contributed to reasonable suspicion that the

8

defendant had just hidden a weapon or contraband.  Although the officers did not testify that they considered this factor, and the judge made no findings about it, the existence of reasonable suspicion "is a question of law," one "that we can answer in the first instance" where the subsidiary facts are undisputed. Commonwealth v. Ford, 100 Mass. App. Ct. 712, 718-719 (2022). Our inquiry is objective, focusing on what the officers reasonably could have believed, rather than on their subjective beliefs or motivations.  See Commonwealth v. Buckley, 478 Mass. 861, 867 (2018); Commonwealth v. Santana, 420 Mass. 205, 208 (1995).  We may supplement the motion judge's findings with evidence from the record that is uncontroverted and undisputed, Jones-Pannell, 472 Mass. at 431, and we may undertake an independent review of video footage or other documentary evidence in the record.  Commonwealth v. Yusuf, 488 Mass. 379, 380-381 (2021); Commonwealth v. Tremblay, 480 Mass. 645, 646 (2018).  We are "free to affirm a ruling on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings." Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997).

Here, both the driver and front passenger seats were pushed to the rear and sharply reclined backward to such an extent

9

that, it could reasonably be inferred, driving or riding in such a seat would have been unnatural and uncomfortable. It could further be reasonably inferred that the purpose of positioning the seats in this manner was, first, to facilitate the driver's placing of an object on the floor behind the passenger seat and, second, to conceal that object from the view of someone outside the car looking in. This factor further supports -- and, when combined with the factors already discussed, establishes -- reasonable suspicion to pat frisk the car for a weapon.[4] The motion to suppress was properly denied.

2. Sufficiency of evidence of possession. The defendant argues that the evidence at trial was insufficient to prove that he constructively possessed the firearm found in the car he was driving. We review to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). We keep in mind that

_____

[4] We therefore need not consider the parties' arguments regarding whether reasonable suspicion could be based on additional factors, such as the defendant's demeanor on this occasion as compared to a prior interaction with one of the officers, or one officer's belief that the defendant had an unspecified "history with drugs and firearms."

10

inferences need only be reasonable and possible, not necessary or inescapable.  Beckett, 373 Mass. at 341.

Constructive possession requires proof beyond a reasonable doubt that the defendant had "knowledge coupled with the ability and intention to exercise dominion and control" of the contraband (citation omitted).  Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989).  "Presence alone cannot show the requisite knowledge, power, or intention to exercise control over the firearm, but presence, supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.'"  Commonwealth v. Albano, 373 Mass. 132, 134 (1977), quoting United States v. Birmley, 529 F.2d 103, 108 (6th Cir. 1976).  Such other incriminating evidence may be referred to as a "plus factor."  Commonwealth v. Ortega, 441 Mass. 170, 174 (2004), quoting Commonwealth v. Velasquez, 48 Mass. App. Ct. 147, 149 (1999).

Here, the plus factors include the slow roll and the unusual seat positions, both of which were shown by trial evidence.  Both factors supported a reasonable inference that the defendant was aware of and sought to conceal the firearm in the car.[5]  Accordingly, we need not resolve the parties' dispute

_____

[5] Contrary to the defendant's argument, even if it was also plausible that the defendant engaged in the slow roll solely to find a safe place to pull over, the slow roll was not the only

11

whether it was also reasonable to infer that the defendant had been wearing the fanny pack and reclined his seat to take it off before being pulled over.

Another plus factor was the defendant's calm, unsurprised demeanor when asked if he had a license to carry; he responded that he did not and asked only if his fiancé was going to be locked up. This permitted an inference that he knew of the firearm in the car. That there could be other, less inculpatory explanations for the defendant's attitude did not bar the jury from considering it. See Beckett, 373 Mass. at 341.

Although the defendant did not own the car, but had merely borrowed it from his uncle, the uncle testified that he had last driven it a few days before the defendant's arrest, he had not loaned it to anyone else since that time, and the firearm and fanny pack were not his. The fiancé, likewise, testified that the firearm and fanny pack were not hers. The jury could have credited this evidence, which permitted, even if it did not require, the inference that the firearm belonged to the

---

plus factor supporting a finding of constructive possession, and thus was not by itself required to "bear the weight of proof beyond reasonable doubt." Commonwealth v. Rodriguez, 456 Mass. 578, 583 (2010).

12

defendant.  Taking the plus factors together, the evidence of constructive possession was sufficient.[6]

3.  Identification evidence.  At the jury-waived ACCA sentence enhancement trial, the Commonwealth sought to prove that the defendant was the same Matthew Davis who, the evidence showed, had been convicted in Federal court in 2009 of possession of cocaine base with intent to distribute.[7]  "Mere identity of name is not sufficient" for such purposes. Commonwealth v. Koney, 421 Mass. 295, 302 (1995).  The Commonwealth therefore relied on the testimony of Boston police Officer Michael O'Rourke, who participated in the 2008 warrant arrest of a Matthew Davis for operating with a suspended driver's license.  During the booking that followed, that Matthew Davis was searched and drugs were found, leading to the Federal drug conviction.  O'Rourke testified, over objection, that he recognized the defendant in the courtroom at the ACCA trial as the same person he had helped arrest in 2008.  The

---

[6] We therefore need not consider the parties' arguments regarding other possible plus factors, such as the defendant's changed demeanor since his last interaction with one of the officers, his statement that he drove with tinted windows because he did not want to be seen, and his "big step" away from the car, cited by the Commonwealth as evidence of flight.

[7] The defendant does not contest that this was a "serious drug offense" under the ACCA, G. L. c. 269, § 10G (e).

13

defendant now challenges the admission of two aspects of O'Rourke's testimony.

a. <u>In-court showup identification</u>.  The defendant argues that because O'Rourke had not identified him before the ACCA trial as the same Matthew Davis he had helped arrest many years earlier, O'Rourke's in-court identification of him was unnecessarily suggestive and impermissible under <u>Commonwealth</u> v. <u>Crayton</u>, 470 Mass. 228 (2014).  In that case, the court held that "[w]here an eyewitness has not participated before trial in an identification procedure, [a court] shall treat the in-court identification as an in-court showup, and shall admit it in evidence only where there is 'good reason' for its admission." <u>Id</u>. at 241.  This rule "appl[ies] only to in-court identifications of the defendant by eyewitnesses who were present during the commission of the crime." <u>Id</u>. at 242.  It does not apply to "a witness who was neither a percipient witness to the crime nor present at the scene of the crime." <u>Commonwealth</u> v. <u>Chin</u>, 97 Mass. App. Ct. 188, 199 (2020).  See <u>Commonwealth</u> v. <u>Collins</u>, 470 Mass. 255, 265 (2014); <u>Commonwealth</u> v. <u>Galipeau</u>, 93 Mass. App. Ct. 225, 232 (2018).

Here, because O'Rourke was not testifying as an eyewitness to any crime committed by any Matthew Davis, <u>Crayton</u> did not bar O'Rourke's in-court identification.  O'Rourke did not witness

14

the traffic offense for which he helped arrest a Matthew Davis in 2008, nor did he witness the defendant's possession of a firearm that led to the present case. When Davis was booked after the 2008 arrest, a booking officer found drugs on Davis's person, and the possession of those drugs was the basis for the 2009 Federal conviction. But O'Rourke was not the booking officer and was unsure whether he himself had witnessed the discovery of the drugs -- initially testifying that he was, but on cross-examination repeatedly saying, "most likely not." He did "[n]ot . . . recall" being there.[8] Crayton therefore does not apply.

---

[8] Even if O'Rourke happened to see the discovery of the drugs, and even if that made him an eyewitness to a crime, there was "good reason" for his in-court identification here. O'Rourke having earlier participated in the warrant arrest, he was "not identifying the defendant based solely on his or her memory of witnessing the defendant at the time of the crime, [and so] there is little risk of misidentification arising from the in-court showup despite its suggestiveness" (emphasis added). Crayton, 470 Mass. at 243. "'Good reason' might also exist where the witness is an arresting officer who was also an eyewitness to the commission of the crime, and the identification merely confirms that the defendant is the person who was arrested for the charged crime." Id. at 242. The fortuity of O'Rourke's possible presence when the drugs were found cannot logically create additional barriers to his making an in-court showup identification of the defendant here as the same person he had earlier helped arrest on the essentially unrelated charge of operating with a suspended license. And the defendant agrees in his appellate brief that "[b]ased on [O'Rourke's] testimony, the judge could have found that the person convicted in [F]ederal court was the same person Officer O'Rourke arrested."

15

The defendant nevertheless points us to the gloss placed on Crayton in Commonwealth v. Dew, 478 Mass. 304, 313 (2017), where the court, quoting Crayton, 470 Mass. at 242, said: "A 'good reason,' in this context, consists of circumstances where an in-court identification is not material to a determination of guilt or innocence, and serves merely to inform the jury that 'the person sitting in the court room is the person whose conduct is at issue.'" The defendant suggests that O'Rourke's in-court identification of him here was material to his guilt or innocence at his ACCA trial, and so there could be no "good reason" under Crayton, supra.

Even if "good reason" were required here, however, Dew does not aid the defendant. The point of the ACCA trial was not to make "a determination of [Matthew Davis's] guilt or innocence" of a serious Federal drug offense, Dew, 478 Mass. at 313, but merely to determine whether the defendant here was the same Matthew Davis who had already been found guilty of such an offense in 2009.[9] O'Rourke's testimony served merely to inform the fact finder that the person in the courtroom at the ACCA trial (the defendant) was the person whose conduct was at issue

---

[9] Cf. Commonwealth v. Johnson, 447 Mass. 1018, 1019 (2006) ("statutory provisions [such as G. L. c. 269, § 10G, i.e., ACCA] do not create independent crimes, but enhance the sentence for the underlying crime").

16

in the 2009 Federal proceedings.  Whether O'Rourke witnessed that person possessing drugs was immaterial.  Cf. Commonwealth v. Matos, 95 Mass. App. Ct. 343, 350 (2019) (arresting officer's in-court identification of defendant intended merely to show that defendant was person officer arrested and person in booking photo, not to show defendant was perpetrator).

We decline to give a literal interpretation to the language in Dew, 478 Mass. at 313, suggesting that, if identification is material to guilt or innocence, good reason cannot exist. Identification is always material; it "is a key element in every criminal trial," and its absence "require[es] acquittal." Koney, 421 Mass. at 302.  Interpreting Dew literally would thus entirely nullify Crayton's "good reason" provisions. Accordingly, the judge did not err or otherwise abuse his discretion in allowing the in-court identification.[10]

---

[10] The defendant further suggests that, on this record, the judge should not have allowed the identification because O'Rourke's previous involvement with the arrest of a Matthew Davis occurred fifteen years earlier, and "it was evident from the officer's testimony that he did not remember what the arrestee looked like."  In this jury-waived trial, where Crayton did not bar the identification, the passage of time and O'Rourke's testimony about his memory of the arrestee's appearance went to the weight of his identification, not its admissibility.  Regardless of what we might do were we finders of fact, we do not second guess the judge's decision to credit O'Rourke's testimony.  Although the defendant's brief also argues that the identification evidence was substantially more prejudicial than probative, that argument was not made below, and any abuse of discretion in that regard did not create a

17

b.  Evidence of arrestee's birthdate.  The defendant
challenges the admission of O'Rourke's testimony regarding the
birthdate of the Matthew Davis he arrested in 2008.  O'Rourke
was initially unable to recall that information but testified
without objection that looking at a police report would refresh
his recollection.  After viewing the report, he testified
without objection that his recollection was refreshed and then,
over objection, testified regarding the arrestee's year of birth
and then his exact date of birth.  The defendant now argues, on
two grounds, that this testimony was not admissible as a present
recollection refreshed but instead was inadmissible hearsay:
(1) it was insufficiently "clear that . . . the witness [was]
testifying from present memory rather than reciting the contents
of the writing," Commonwealth v. Daye, 393 Mass. 55, 65 n.11
(1984); and (2) there having been no foundation laid that
O'Rourke ever knew the arrestee's birthdate, he should not have
been "allowed to refer to a paper to refresh his recollection
with reference to a matter about which he never had any
knowledge."  Kaplan v. Gross, 223 Mass. 152, 156 (1916).

Even assuming arguendo that these particular objections
were preserved, any error was not prejudicial.  The evidence

_____

substantial risk of a miscarriage of justice, for the reason
stated immediately infra regarding social security numbers.

18

here included a certified copy of a Federal court record of the 2009 conviction, showing that the Matthew Davis at issue there was born in 1988 and had a social security number ending in four specified digits. The evidence also included a certified copy of a 2023 Registry of Motor Vehicles (RMV) record for a Matthew Davis, showing a 1988 birthdate and a social security number ending in the same four digits. The RMV record also included a color photograph of Matthew Davis, which the judge could have found matched the appearance of the defendant in court before him. Taken together, this was ample evidence that the defendant was the same person convicted of the Federal drug offense. We are confident that the admission of further evidence regarding the month and day of birth of the person at issue in the Federal proceeding had no or but very slight effect.

4. <u>Dead time</u>. At sentencing, the defendant filed a motion for jail credits requesting credit for fifty-nine days of dead time -- the period from December 17, 2022, to February 13, 2023, -- that he spent solely in Federal pretrial custody for an unrelated offense (1) that he allegedly committed after the firearm offense at issue here, but (2) of which he was ultimately acquitted before the trial in this case. The judge, while allowing credit for time spent in custody on both the Federal charge and the firearm charge simultaneously, denied

credit for the requested fifty-nine days spent solely in Federal custody, on the ground that he had no authority to grant it.

On appeal, the defendant argues that under decisions such as Commonwealth v. Milton, 427 Mass. 18, 23-25 (1998), the judge did have such authority, and that, "in the interest of fairness, [the defendant] should not be required to serve 'dead time' [where he is] not banking time or getting double credit for time." Williams v. Superintendent, Mass. Treatment Ctr., 463 Mass. 627, 632 (2012). The Commonwealth agrees. Based on our independent review, see Commonwealth v. Poirier, 458 Mass. 1014, 1015 (2010), we agree as well.

Conclusion. The judgment is affirmed. The order on the defendant's motion for jail credits is reversed, the sentence is vacated, and the case is remanded for recalculation of the sentence to include credit for fifty-nine days of dead time.

So ordered.

By the Court (Meade, Sacks & Hodgens, JJ.[11]),

Clerk

Entered: March 31, 2025.

---

[11] The panelists are listed in order of seniority.